**HELLER v. SELECT LAKE CITY THEATRE OPERATING CO.**

No. 10249.

United States Court of Appeals
Seventh Circuit.

March 15, 1951.

As Amended April 2, 1951.

Rehearing Denied April 10, 1951.

Bruce Parkhill, Chicago, Ill., for appellant.

Matthew J. O'Brien, James R. Hanrahan, Richard E. Keogh, and John D. Pope, all of Chicago, Ill., for appellee.

Before KERNER, FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

Frieda W. Heller, a citizen and resident of the State of Kentucky, filed suit in the United States District Court for the Northern District of Illinois, Eastern Division, to recover $50,000 damages for personal injuries alleged to have been sustained by reason of the negligence of the defendant, Select Lake City Theatre Operating Company, a corporation, in the maintenance and operation of the new Great Northern Theatre, in Chicago, Illinois.

Since there is no question arising on the pleadings, it is necessary to state only that the defendant was charged with negligence in one or more of the following particulars:

(a) In failing to provide adequate and safe exit facilities from the row in which plaintiff was seated;

(b) In failing to provide adequate lighting in the said theatre during the time patrons were leaving the theatre;

(c) In maintaining a certain step at or adjacent to the row containing plaintiff's seat in a dangerous and deceptive condition, such that the presence thereof was concealed and disguised;

(d) In failing to give adequate warning of the presence of a certain step at or adjacent to the row containing plaintiff's seat;

(e) In failing to maintain adequate and proper safeguards to protect the safety of patrons within the said theatre; and

(f) In maintaining and operating the said theatre in a dangerous condition and in a negligent manner.

The evidence, produced on behalf of the plaintiff, discloses that on July 31, 1948, she, accompanied by her husband, attended the matinee performance of the stage play "High Button Shoes" at the defendant's Great Northern Theatre, in Chicago, Illinois. Neither of them had ever before attended a performance in said theatre.

Their seats were in aisle "S" on the left-hand side of the theatre, and were numbered 10 and 11. They entered the auditorium at the rear thereof and on the right-hand side. They crossed to the left-hand side behind the seats through an aisle at the rear of the theatre.

It appears that the seats in the theatre are in rows numbered alphabetically from the front to the rear. The rows of seats behind the "S" row are shorter in both the right and left-hand sides of the theatre; the "S" row and other rows closer to the front of the auditorium containing a greater number of seats.

It further appears that in row "R" there is a post which protrudes slightly back of the row and causes a gap in row "S" directly behind the post. This situation exists on both sides of the auditorium.

The plaintiff and her husband were shown to their seats on the left-hand side of the house through the gap in row "S" by an usher of the defendant. The various rows of seats are on platforms raised slightly above the level of the aisle by which they are approached. The step-up on the left-hand side, where the gap exists in row "S," is between three and four inches high. Neither the plaintiff nor her husband noticed the step-up or rise when they were shown to their seats, nor was said step-up called to their attention. The house lights were turned on while they were being seated.

The evidence further discloses that the theatre, at each step-up from an aisle to a row of seats, has caused a white stripe to be painted on the edge of the platform on which the seats are located, and has so placed a hooded light that it shines down on the edge of the platform showing the step-up or rise. It appears that no such stripe was maintained at the gap in row "S" on the left-hand side of the theatre, nor was any light maintained there to show the step-up from the aisle to the seats.

There is a similar gap on the right-hand side of the theatre where a fixed bar has been placed by the management across the gap in row "S" thus preventing access to the row through the gap. It further appears that on the bar plugging the gap on the right-hand side of the auditorium a hooded lamp shining down on the edge of the seat platform illuminates the step-up or rise from the aisle to the seat row.

Neither the plaintiff nor her husband left their seats in aisle "S" during the performance. When the show was over the plaintiff started to leave her seat along the same path by which she entered. She went through the gap in row "S" sidewise because it was narrow, and as her foot slipped over the step at the edge of the gap she lost her balance and fell, sustaining the injuries of which the complaint is made. The house lights were on as she was leaving her seat but there was no painted stripe marking the step-down from row "S" to the aisle, neither was there a hooded light shining down on the step-up or rise there located.

It was stipulated that the plaintiff's physician would testify that in her fall she sustained a comminuted impacted fracture of the left wrist, that the physician first attempted to reduce the fracture under an anesthetic but was not successful; that it was necessary to perform a second reduction; that an examination of the plaintiff, and X-rays taken the day before trial showed successful results of his treatment, but there is only about 85 percent of the normal movement of the wrist, and that

there is a residual weakness and pain upon use, which is permanent and will not improve with time.

Plaintiff had testified as to her treatment at St. Luke's Hospital, in Chicago, and to payment of certain medical and hospital bills. Her arm was in a cast about five weeks, and she was under the care of her own physician in Louisville for some additional time. Her hand and arm still bother her.

At the close of plaintiff's evidence, the trial court directed, on motion of the defendant, that the jury return a verdict finding defendant not guilty. Judgment for defendant was entered on the verdict thus returned, and a motion for new trial by plaintiff was over-ruled. This appeal is prosecuted to reverse the consequent judgment.

Under Federal law, the rule is that a motion to direct a verdict at the close of plaintiff's case presents a single question, whether there is in the record any evidence which standing alone and with all its intendments most favorable to the party resisting the motion, tends to prove the material elements of the case declared upon. Steber v. Kohn, et al., 7 Cir., 149 F.2d 4.

In the case at bar, the record shows conclusively that the defendant in the maintenance and operation of its theatre had prevented access to and egress from aisle "S" through the gap or opening in said aisle on the right-hand side of the auditorium by placing a bar across said gap with a hooded light thereon illuminating the step-up between the aisle level and seat level of row "S." At the same time the action of the defendant's ushers encouraged the entrance to and egress from aisle "S" through a similar gap on the left-hand side of the auditorium.

Moreover, in order to indicate the rise or step-up from the aisle to the seat level, defendant had throughout the auditorium caused a white stripe to be painted on the edge of the seat level platform and had installed hooded lights on an adjacent seat which illuminated the rise or step-up. No such stripe and light were maintained to illuminate the rise up to the seat level through the gap on the left-hand side of

the house. This point appears to have impressed even the trial judge because he attempted to answer it by saying: "I would imagine that if the Great Northern Theatre were used for the showing of a motion picture, which I assume it can be used for and which I think I can take notice of the fact that it has been used for that on occasions, these small lights at the aisle would have been burning all the time during the picture to light the aisle."

The difficulty with this attempted explanation is that in fact, as shown by an affidavit presented on motion for a new trial, that the Great Northern Theatre is not equipped for the showing of moving pictures, and that no moving picture has ever been shown in that theatre. The truth is that the painted stripes and adjacent lights are maintained by the defendant in connection with the operation of the house as a so-called "legitimate" theatre.

Having been directed to her seat by defendant's usher through the gap described as existing in that aisle, it was only natural that plaintiff should seek to leave her seat by the same path through which she reached it. The defendant should have anticipated the fact, and having caused its usher to direct her to her seat in aisle "S" through said gap in the aisle, it should have marked the step-up or rise from the aisle to the seat row as it had marked other rises or step-ups in the auditorium, or should have given her adequate warning that such step-up or rise in level existed.

The plaintiff was a stranger, both in the city of Chicago and in the theatre, and had the right to assume that it would be operated in such a fashion as to make it reasonably safe for patrons to enter and leave their seats in the various rows. From the circumstances disclosed in this record, she had no reason to expect danger or to anticipate negligence on the part of the defendant in the maintenance and operation of its place of amusement. Pollard v. Broadway Central Hotel Corp., 353 Ill. 312, 187 N.E. 487.

The fact that the defendant, through its ushers, directed the patrons of its theatre to use the gap in row "S" on the

652

left side of the auditorium without informing them of the step-up or rise from the aisle to the seat platform level, and without maintaining a light painted stripe marking the rise and a hooded lamp illuminating it, when such stripes and illumination were generally maintained at other rises or step-ups from aisles to seat platforms in their theatre, was sufficient to warrant the court submitting the cause to the jury to determine whether, under all the circumstances, defendant was negligent in the maintenance and operation of its place of amusement.

It was also the function of the jury to decide, on this record, whether or not the plaintiff was, at the time and place of the occurrence, in the exercise of due care for her own safety.

Since, in our opinion, the court's action in directing a verdict was erroneous, the judgment of the District Court is reversed and the cause remanded for a new trial.