In re Lottie Joan NIEMIEC, Debtor.

**PIONEER BANK & TRUST CO., Plaintiff,**

v.

**Lottie Joan NIEMIEC, Defendant.**

Nos. 82 B 00575, 83 A 0661.

United States Bankruptcy Court, N.D. Illinois, E.D.

May 14, 1986.

Steven Sensibar, Law Offices of Lawrence Friedman, Chicago, Ill., for plaintiff.

Ira Hecht, Las Vegas, Nev., Howard H. Levin, Berkson, Gorov & Levin Ltd., Conrad O. Dunker, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

FREDERICK J. HERTZ, Bankruptcy Judge.

### I.

This case comes to be heard on the motion of the adversary defendant, Lottie Niemiec, (hereinafter "Niemiec"), for a directed verdict in her favor at the close of the case-in-chief of the adversary plaintiff, Pioneer Bank & Trust Company (hereinafter "Pioneer"). Pioneer commenced an adversary proceeding against the debtor, Niemiec, seeking to declare a debt nondischargeable in the amount of $7,950.62, together with accumulated interest. This obligation was evidenced by a promissory note dated October 27, 1980. The thrust of the nondischargeability claim is premised upon an alleged false financial statement prepared by Niemiec and submitted to Pioneer, pursuant to § 523(a)(2)(B) of the Bankruptcy Code. 11 U.S.C. § 523(a)(2)(B).

### II.

In October 1977 Niemiec purchased a condominium unit in the Americana Towers at 1636 North Wells Street, Chicago, Illinois. To finance this acquisition, Niemiec obtained a mortgage from Talman Home Federal Savings & Loan. A year later Niemiec decided to borrow money in order to pay off, and thus consolidate, her assorted outstanding debts.

Niemiec approached Pioneer for an $8,000 loan. In procuring the loan, Niemiec dealt with Richard Gribble, an officer of the bank and an associate of her friend, Frank Pullano. Pioneer informed Niemiec that she had to put up her condominium as collateral to obtain the loan. Pioneer would secure the loan by having her condominium placed into a land trust with Pioneer as trustee holding legal and equitable title and Niemiec possessing the beneficial interest until the loan was repaid.

Niemiec agreed to this so that she could obtain the loan. On October 13, 1978, Niemiec executed a trust agreement and gave Pioneer a deed in trust granting Pioneer legal and equitable title in her condominium. Pioneer then recorded the deed, but inadvertently failed to register the deed in trust in the Torrens system of title registration.[1]

In addition to placing her condominium in a land trust, Pioneer required Niemiec to sign a "Security Agreement" which assigned to Pioneer her beneficial interest in the land trust. This dual device of land trust and assignment of beneficial interest was to insure repayment of the loan. The

---

1. In Cook County, Illinois, once a property is registered in the Torrens System, subsequent interest holders must register in Torrens their interest to place the public on notice of their interest in a piece of property. Subsequent title searches are conducted utilizing Torrens system of title registration, rather than the Recorder's Office.

loan would have in fact been secured if Pioneer had not carelessly failed to register the deed in trust in the Torrens system.

The loan to Niemiec took the form of a 90-day renewable note. The entire note came due in 90 days, but Pioneer had the power to allow renewal at its discretion, provided that the interest on the prior note was paid. Each renewal acted as the sole evidence of any existing debt.

On October 25, 1978, Niemiec signed her first 90-day renewable note for $8,000. Although her first note matured January 23, 1979, Gribble and Pioneer did not request that Niemiec renew the note and pay the interest due until February 4, 1979. Thus, began a history of late or non-payment. Pioneer similarly allowed renewal of Niemiec's note again in April and July of 1979. Finally, in an October 23, 1979, letter, Gribble and Pioneer requested that Niemiec pay off her latest note in full upon maturity on October 31, 1979.

At about this time, Niemiec's attorney, Howard Kilberg, approached Niemiec about selling her condominium. Kilberg had found a buyer if Niemiec was willing to sell. Niemiec proved receptive to this idea. On November 14, 1979, Niemiec sold her condominium and realized $8,237.91 in profit after satisfying her mortgage. It should be noted that Niemiec was able to sell her property in which Pioneer had equitable and legal title because Pioneer's failure to register the Deed in Trust in the Torrens system made Niemiec the owner of record.

On December 6, 1979, Gribble wrote to Niemiec: "Your note in the amount of $8,000 matured on October 31st, 1979. Frank [Pullano] has indicated that it was to be paid off from the proceeds of the sale of the apartment." [2]

On December 17, 1979, Gribble wrote Niemiec once again, but this time Gribble no longer sought full payment. Instead Gribble enclosed for Niemiec's signature another renewal note with maturity set for

January 15, 1980. This note, like the previous ones, stated that the loan was secured by the condominium.

After this note matured in January, Niemiec signed another renewable note. Niemiec continued to renew her note at regular intervals until October 27, 1980, when she signed her final renewal note. This note, like the others, also contained a pledge granting Pioneer a security interest in the condominium which she no longer owned.

Since October of 1980, Niemiec has failed to make payment on the note of $7,950.62. Pioneer contends that Niemiec's false pledge of security constitutes fraud sufficient to block the dischargeability of the debt. Pioneer also maintains that breach of a warranty not to sell the collateral and non-payment of the note warrant the non-dischargeability of the debt.

### III.

Pioneer has filed a three-count adversary complaint seeking to prevent discharge of the debt. The case came to trial on December 26, 1985. In deciding a motion for a directed verdict, this court must consider all the evidence presented in the light most favorable to the opposing party. *Heller v. Select Lake City Theatre Operating Co.*, 187 F.2d 649, 651 (7th Cir.1951); *Oberlin v. Marlin American Corp.*, 596 F.2d 1322, 1326 (7th Cir.1979).

A motion for directed verdict cannot be granted unless under the facts presented, the court can arrive at but one conclusion. *See e.g., Crowder v. Lash*, 687 F.2d 996 (7th Cir.1982); *Hohmann v. Packard Instrument Co.*, 471 F.2d 815 (7th Cir.1973). In deciding the present motion for directed verdict, this court has before it assorted exhibits, affidavits, depositions, pretrial orders, Niemiec's testimony, the trial transcript, and Pioneer's brief opposing this motion. Having considered in detail all of the above in the light most favorable to Pioneer with its first pretrial order.

---

**2.** This letter and all other correspondence between the parties was submitted to this court by

Pioneer, this court must grant Niemiec's motion for a directed verdict.

### A. *Count I—Non-Payment*

The facts alleged, as well as the evidence presented, in Count I do not justify preventing the discharge of Niemiec's debt. Count I of the adversary complaint merely alleges non-payment of the October 27, 1980, promissory note. While the evidence does indeed establish non-payment of the debt, this alone does not prohibit discharge.

In the Bankruptcy Reform Act of 1978 and its amendments, Congress has provided an antidote for financially sick debtors. The denial of a discharge is a harsh measure directed against unscrupulous bankrupts who obtained credit on the basis of intentionally false statements. *In re Dolnick*, 374 F.Supp. 84, 90 (N.D.Ill. 1974). The Act, and its predecessors, unequivocally contemplates a fresh start for the debtor. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *See—generally*, 1 Collier On Bankruptcy ¶ 1.03 (15th Ed.1985). In recognition of the above factors, a court must construe the sections providing for exception to discharge strictly against an objector and liberally in favor of the bankrupt. *In re Tabibian*, 289 F.2d 793 (2d Cir.1961).

Mere non-payment of the note standing alone, as alleged in Count I, is not the type of conduct for which the Act forbids discharge. If it were otherwise, the Act would be of little value. Thus, Niemiec's failure to pay the note, even though she promised to do so, does not, without more, constitute improper conduct sufficient to block discharge of the debt.

### B. *Count II—Fraudulent Statement*

Count II of Pioneer's adversary complaint alleges that intentional fraudulent representations by Niemiec concerning the existence of collateral induced Pioneer to refinance her loan. Because this representation was made in writing—the pledge in the promissory note—the applicable section of the Act is Section 523(a)(2)(B).

A party seeking to establish an exception to the discharge of a debt in bankruptcy bears the burden of proof. *In re Martin*, 698 F.2d 883, 887 (7th Cir.1983); *In re Trewyn*, 12 B.R. 543, 545–46 (Bankr. W.D.Wis.1981). Under Section 523(a)(2)(B), to prevent discharge, Pioneer must prove that (1) Niemiec's representation about the security interest was "materially" false; (2) that Niemiec made the written representation with intent to deceive; and (3) that Pioneer "reasonably relied" upon the written representation in refinancing the loan. *See In re Bogstad*, 779 F.2d 370, 372 (7th Cir.1985). The standard of proof for these elements is one of "clear and convincing evidence." *In re Bogstad, supra.*

#### 1. *Material Falsity*

When Niemiec signed the note of October 27, she pledged a security interest in property, . which she admittedly did not own. Such a representation certainly was false, but under these particular facts, not materially false as required. Courts have defined material falsity to be "an important or substantial untruth." *See, e.g. In re Mutschler*, 45 B.R. 482, 491 (Bankr.D.N.D. 1984); *In re Anderson*, 29 B.R. 184, 191 (Bankr.N.D.Iowa 1983); *In re Magnusson*, 14 B.R. 662, 668 (Bankr.N.D.N.Y.1981).

The accepted test to determine *material falsity* asks the question: would the lender have made or refinanced the loan had he or she known of the debtor's true financial condition? *See, e.g., Wolfe v. Tri-State Insurance Co.*, 407 F.2d 16, 19 (10th Cir. 1969); *In re Hunt*, 30 B.R. 425, 440 (Bankr. M.D.Tenn.1983); *In re Magnusson*, 14 B.R. 662, 668 (Bankr.N.D.N.Y.1981).

Pioneer has the burden of proving by clear and convincing evidence that the answer to the question above is: "no, we would not have refinanced the loan with such knowledge." Proof of this answer is often attempted to be shown by the testimony of the lending officer that if he or she had known the truth concerning the false statement, he or she would have refused to make or refinance the loan. *See* 1

Cowans, *Bankruptcy Law and Practice*, 343 (1978).

In the instant case, Pioneer has utterly failed to prove by clear and convincing evidence that Niemiec's false representation induced Pioneer to refinance the loan. Pioneer offered absolutely no direct evidence that Pioneer would not have refinanced the loan if the truth were known. Moreover, Gribble's letter of December 6 forbids any finding of "materiality" absent other proof. In addition, Pioneer offered no evidence regarding the approval of Niemiec's loan in particular or the process of renewing notes in general. Bald assertations in the pleadings that false representations induced the refinancing cannot rise to the level of clear and convincing evidence. Hence, Niemiec's false representations cannot prevent discharge because it was not proven "materially" false.

### 2. *Intent to Deceive*

■ To prevent discharge under Section 523(a)(2)(B) Niemiec's false statement must have been given with intent to deceive. That is, Niemiec must have given the false statement to induce the refinancing of the loan. Proof of such fraudulent intent may be implied if the totality of the circumstances so require. *In re Blatz*, 37 B.R. 401, 404 (W.D.Wis.1984). Moreover, direct proof of fraudulent intent is rare, and, hence the totality of circumstances often is required to prove fraudulent intent. *See, In re Schlickmann*, 6 B.R. 281 (Bankr.D. Mass.1980).

Having considered all the evidence offered by Pioneer and the totality of the circumstances, this court finds that Pioneer failed to prove by clear and convincing evidence that Niemiec made a false statement with the intent to deceive. The evidence and totality of circumstances do not suggest that Niemiec made any false statement to induce renewal of her note.

Considered in the light most favorable to Pioneer, the evidence suggests that Niemiec signed the renewal notes containing the false statement solely at the direction of Pioneer. The correspondence between Niemiec and Pioneer's agent, Gribble, clearly indicates that she signed all the renewal notes at Gribble's direction. By December 6, 1979, the evidence suggests that Gribble knew the condominium was sold, yet he continued to request Niemiec's signature on the note as drafted. Niemiec's false statement on October 27, 1980, was not made to deceive Pioneer because Pioneer through its agent, Gribble, is charged with knowledge of the statement's falsity. *See, e.g., Nichols v. Eisenhower*, 153 Cal.App.2d 361, 314 P.2d 525 (1957).

### 3. *Reasonable Reliance*

To prevent discharge of Niemiec's debt because of a false statement, Pioneer must prove by clear and convincing evidence that it reasonably relied upon the false statement in renewing the note. *See e.g., In re Garman*, 643 F.2d 1252 (7th Cir.1980). Pioneer failed to prove any reliance upon the false statement, much less reasonable reliance.

Gribble's letter to Niemiec of December 6, 1979, clearly indicates that Pioneer knew that Niemiec had sold her condominium and therefore that the collateral no longer remained. Pioneer offered no evidence that Niemiec affirmatively assured the bank after the December 6 letter that she continued to own the condominium. Absent proof of such assurances, and in light of the December 6 letter, there can be no reliance on Niemiec's statement as to ownership of the collateral.

Moreover, if such assurances had been made, Pioneer would have been obligated to check the status of the property in the Torrens system, considering Niemiec's previously expressed intentions to sell the collateral. The Bankruptcy Code does not allow a creditor to "assume the position of an ostrich with its head in the sand and ignore facts which are readily available to it." *In re Blatz*, 37 B.R. 401, 404–05 (Bankr.E.D.Wis.1984) (quoting *In re Yeiser*, 2 B.R. 98, 101 (Bankr.M.D.Tenn.1979).

■ As the above review of the necessary elements indicates, Pioneer has failed to establish by clear and convincing evi-

dence all the necessary elements to block discharge pursuant to § 523(a)(2)(B).

### C. *Count III—Breach of Warranty*

■ Count III of the adversary complaint alleges that Niemiec breached a warranty in her security agreement not to sell her condominium without Pioneer's permission. Assuming *arguendo*, that Niemiec did breach such a warranty, such a breach, in the instant case, does not provide legal cause for preventing discharge of the debt.

Under these circumstances, only fraud under the Code prevents discharge. Breach of warranty does not rise to the level of fraud without evidence that (1) Niemiec intended to breach the warranty at the time of the promise, and (2) that Pioneer would not have made the loan without such a warranty. *See, e.g. Emrick v. Merriman*, 23 Ill.App. 24 (1886). Pioneer offered no proof on the above issues, and this court will not hold Niemiec liable on such a theory in the absence thereof.

### IV.

In sum, Pioneer has failed to prove by clear and convincing evidence that Niemiec's debt should not be discharged. Therefore, this court is compelled to discharge the debt, and Niemiec's motion for a directed verdict must be granted.

Counsel for Niemiec is to submit a draft order in accordance with this opinion within five (5) days.

IT IS SO ORDERED.