**In re Wilbur Wade HOLSTON (S.S. # 128–44–5157) and Linda Ann Schaeffer Holston (S.S. # 101–46–9149), Debtors.**

**CITY NATIONAL BANK OF BATON ROUGE, Plaintiff,**

v.

**Wilbur Wade HOLSTON and Linda Ann Schaeffer Holston, Defendants.**

**Bankruptcy No. 84–00372.**
**Adv. No. 84–0112.**

United States Bankruptcy Court,
M.D. Louisiana.

Feb. 14, 1985.

**104**

Judith R. Atkinson, Baton Rouge, La., for plaintiff, City Nat. Bank of Baton Rouge.

Fred A. Blanche, III, Baton Rouge, La., for debtors/defendants.

Charles N. Malone, Baton Rouge, La., Trustee.

## OPINION ON RECONSIDERATION

WESLEY W. STEEN, Bankruptcy Judge.

This case was heard on January 28, 1985. At the conclusion of testimony, the Court announced that it would dismiss the complaint and would determine the debt to Complainant to be dischargeable; the Court stated that the Complainant had failed to prove fraud and misrepresentation. The Court has, however, on its own motion prior to entry of the order, reconsidered the law and herein modifies its conclusion. But first, one should know the facts.

This dispute concerns VISA and Master-Card accounts opened by Complainant in favor of the Debtors [1] in May, 1983; the accounts became delinquent some three months later, in August, 1983. The Debtors' bankruptcy case was filed in May, 1984.

The Debtors first contacted an attorney and discussed the possibility of relief under the Bankruptcy Code in August of 1983, approximately three months after opening the MasterCard account, but about nine months prior to filing the bankruptcy petition. The conclusion of that conference was that the Debtors would not file bankruptcy, but would try to work out their financial obligations. The Debtor testified that the decision to file in bankruptcy was made subsequent to the last charge against the card. The documents show that the last charge on the card was made approximately two days prior to filing in bankruptcy.

The most substantial charges on the card were made prior to November, 1983. Complainant introduced into evidence a photocopy of the account statement for December, 1983; it shows a "prior balance" of

---

1. This is a joint case; Mr. and Mrs. Holston are the Debtors.

$1,116.68. The evidence does not show what may have occurred during and prior to November of 1983. The Debtors apparently incurred debt on the card of slightly more than $1,000.00 from May of 1983 until November of 1983. By simple mathematics, it would appear that the charges on the card during the first six months were equal to or greater than the average charges during the latter six months. Complainant also introduced into evidence the account statement for each month subsequent to December; the last statement is for June, 1984; it shows a balance of $1,843.15. The exhibits show routine, recurring charges each month plus substantial finance charges; the exhibits also show that payments were made during that period. More specifically, in the six months prior to bankruptcy, the Debtors were charging between $100.00 and $150.00 per month, consisting of seven to ten transactions per month in the approximate amount of $15.00 to $20.00 each, and the Debtors paid $290.00 on the account; the additional increase in the account results substantially from interest. The payments on the account were as follows:

| Date | Payment |
| --- | --- |
| November 14, 1983 | $50.00 |
| January 16, 1984 | $65.00 |
| February 9, 1984 | $125.00 |
| April 10, 1984 | $50.00 |

The Debtors experienced substantial economic difficulty during this period. Mr. Holston lost one or more jobs and Mrs. Holston was not employed outside the home; their income was never sufficient to "catch up" on their debts. Each month the Debtors were paying what then appeared to be the most critical debt.

On March 22, 1984, the creditor "statused" the account; this meant that the Debtors were sent a letter stating that the account was no longer open and that the Debtors should return the cards and cease to use the account. The account number was placed on a "hot sheet" sent to merchants indicating that the account was no longer valid and that charges to the account would not be honored by the bank. The Complainant's computer was programmed to deny charge authorization if a merchant inquired. Mrs. Holston testified that she was informed of this revocation of the account and that she did not use the card subsequent to that notice. She testified that she notified her husband of this fact. Mr. Holston testified that he does not recall being told of this fact and did not know that the account was revoked.

Seventeen charges were made subsequent to March 22. They are virtually all gas, auto, and convenience store purchases. The total charges after March 22 were $258.56, an average purchase of about $15.20.

At the conclusion of the trial of this case, the Court announced that it could not find from these facts that the Debtors had defrauded the creditor or that the Debtors had misled the creditor. Although the Debtors did not know that they could pay the charges as they incurred them on their card, neither was the Court convinced that the Debtors incurred the charges without intent to pay. The Debtors were, for approximately one year, in substantial economic difficulty and were subsisting from paycheck to paycheck with the hope that some day they would "catch up" on their bills. This Court thinks that "fraud" and "misrepresentation" require something more.

Therefore, on first impression the Court concluded that the debt was dischargeable since inadequate proof had been presented to show the Debtors' intent not to pay for the charges as they were incurred. However, on reconsideration the Court believes that its first conclusion was erroneous because the Court considered the indebtedness as a single indebtedness that would either be dischargeable or not dischargeable as a whole. A charge card debt like the one involved in this case, however, involves a series of transactions; the circumstances that surround one charge to the card might be different from the circumstances that surround another charge. Therefore, the Court feels it would be more appropriate to look at the separate charges rather than to

make a single determination with respect to the entire account.

In doing so, the Court feels that it previously gave inadequate consideration to the testimony that the Debtors were told on March 22, 1984, that the account was closed and that no further charges should be made to the account. Subsequent to that date, the Debtors made charges to the account while aware that the charges were not authorized. The Debtors, by presenting the card, led the merchants to believe that the card was valid and in good standing. The Debtors received the goods and services from the merchants in full knowledge that the merchants were delivering them on account of that false belief. The Court concludes that such conduct constitutes actual fraud and renders the debt for those goods non-dischargeable.

11 U.S.C. § 523 (as applicable to this case) provides as follows:

"A discharge ... does not discharge an individual debtor from any debt ... for obtaining money, property, services, or an extension, renewal, or refinance of credit, by ... false pretenses, a false representation, or actual fraud ..."

There is a growing body of law dealing with the use of credit cards. Some of these cases suggest that a determination of dischargeability of credit card debts is somehow different from the determination of dischargeability of other debts; the cases list several criteria to use in determining whether a credit card debt is dischargeable.

■ Obviously the statute itself provides no special consideration for discharge of credit card debts.[2] The issues, then, are (i) whether there is a debt; (ii) whether the debt is for money, property, services, or an extension, renewal, or refinancing of credit,

and (iii) whether the debt was obtained by false pretenses, a false representation, or actual fraud.[3]

There is no dispute in this case (and there is seldom a dispute) concerning the first two items. The issue here is whether the debt was obtained by false pretenses, a false representation, or actual fraud.

The seminal case in the Fifth Circuit is *Davison-Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir., 1941) which holds that a debt is dischargeable notwithstanding the fact that the debt was obtained by the debtor's consciously concealing (by failing to disclose) her intention not to repay. In the absence of overt false pretenses or representation, the Court held that § 17(a)(2) of the Bankruptcy Act did not apply.

The Fifth Circuit later recognized criticism of this position and questioned its continuing validity. In *In re Boydston*, 520 F.2d 1098 (5th Cir., 1975) the court said:

The rationale underlying *Davison-Paxon* has been severly eroded in the modern world of credit transactions and the decision has been the subject of much criticism." 520 F.2d 1098, 1101.

Nevertheless, in *Boydston* the court did not reverse or modify *Davison-Paxon;* the *Boydston* decision was based on the "clearly erroneous rule" of appellate review, holding that the bankruptcy referee was not clearly erroneous in deciding that Sears had not proved fraud; the bankruptcy referee made the following determination of fact that the Fifth Circuit found to be not clearly erroneous:

" 'The evidence offered impresses me more as a reckless, irresponsible naivete on the part of a recently retired military

---

**2.** This case is governed by the Bankruptcy Code prior to its amendment by the substantive amendments in P.L. 98–353, the Bankruptcy Amendments and Federal Judgeship Act of 1984.

**3.** *A number of cases cite these elements: (1) property or services were obtained by fraudulent or reckless misrepresentations; (2) intent to deceive, and (3) reasonable creditor reliance. See, for example, In re Schnore, 13 B.R. 249*

(Bkrtcy., W.D.Wis., 1981); *In re Ciavarelli*, 16 B.R. 369 (Bkrtcy., E.D.Pa., 1983). Except to the extent that these cases suggest that fraud can be implied, the other method of listing the elements is acceptable. The statement of the elements in the full text of this opinion is preferred because it follows the current statute and does not depend so heavily on statutory law (the Bankruptcy Act) that has been superseded.

man, who had just remarried, than cold, calculated, sophisticated planning by one bent on financial deception.'" 520 F.2d 1098, 1100.

Given that determination of fact, the Fifth Circuit held that the debt had not arisen as a result of false representation or false pretenses. Although the Fifth Circuit decision was expressly based on a standard of appellate review, it clearly holds that "reckless, irresponsible" behavior is not sufficient to render a debt non-dischargeable.

Sears, Roebuck & Co. gave the Fifth Circuit another opportunity to reverse *Davison-Paxon* in *In re Wood*, 571 F.2d 284 (5th Cir., 1978); again the Fifth Circuit declined, this time *per curiam*, and again expressly failing to reach the issue squarely because of insufficient evidence in the record to prove overt action to conceal one's financial condition and insufficient evidence to prove absence of intent to repay. While the express *desiderata* of *Wood* avoids a confrontation with the holding in *Davison-Paxton*, in *dictum* the Court approved that holding, thus:

> "Wood merely purchased goods through the ordinary use of his Sears account without referring to his ability to pay. The absence of explicit representations concerning financial condition by the bankrupt requires a holding that there have been no false representations. *See Davison-Paxon v. Caldwell, supra.*" 571 F.2d 284, 285.

Is *Davison-Paxon* still good law? Some cases hint that it may not be: *In re Boydston, supra.* Some flatly say that it is no longer the law: *In re Quintana,* 4 B.R. 508 (Bkrtcy., S.D.Fla.1980); *In re Poteet,* 12 B.R. 565 (Bkrtcy.N.D.Tex., 1981.)

It is not necessary, however, to reverse *Davison-Paxon* to validate the decisions in *Quintana* and *Poteet,* to stabilize the waivering in *Boydston* and *Wood,* and to recognize the good sense in the dissent in *Davison-Paxon* itself. This serendipity results from an amendment of the statute.

■ *Davison-Paxon* was decided under the Bankruptcy Act; § 17(a)(2) of that statute merely provided that debts arising from false pretenses or false representations were non-dischargeable. The Bankruptcy Code carries over those criteria, but *adds* "or actual fraud" as a grounds for non-dischargeability. In *Davison-Paxon* the Fifth Circuit read the prior statute literally to require proof of an overt act constituting a false pretense or an overt act constituting a false representation. The addition of "actual fraud" in the new statute, however, expands the scope of non-dischargeable debts to include those that arise from acts *or omissions* that are intentionally or consciously used to deceive or to trick another; an overt act is not necessary to actual fraud because an intentional or conscious omission can constitute fraud.[4]

The holding of *Davison-Paxon* requires an overt act constituting a false pretense or an overt act constituting a false representation. In addition, *Collier* cites a legion of cases holding that "... fraud implied in law which may exist without imputation of bad faith or immorality is insufficient."[5] Because of this requirement,

---

**4.** *Collier on Bankruptcy,* 15th ed., ¶ 523.08[5] concludes that:

> "The addition of the words 'or actual fraud' probably makes no change in the law as it existed prior to the enactment of the Code because false pretenses and representations were construed to mean acts involving moral turpitude or intentional wrong; fraud implied in law, which may exist without imputation of bad faith or immorality, was held to be insufficient."

Although it may be true both that "false pretenses and representations require bad faith" and that "actual fraud requires bad faith", it does not follow that "actual fraud" is not different from false representations and false pretenses. This Court believes that a conscious omission can result in fraud; the Fifth Circuit in *Davison-Paxon* has ruled that false representations and false pretenses require an overt act. Thus, contrary to the conclusion in *Collier,* the addition of "actual fraud" may have extended non-dischargeability to debts arising from omissions involving moral turpitude or intentional wrong and to acts other than false representations and false pretenses involving moral turpitude or intentional wrong.

**5.** These cases and this conclusion is supported by the legislative history indicating that § 523(a)(2)(A) was intended to codify *Neal v.*

many of the credit card cases have found that when a person presents a credit card, he makes an "implied" or a "constructive" representation that he has the means to pay the bill and that he intends to do so. But, to imply a representation that one knows to be false and then to base a decision on that implied false representation is simply a longer journey to the same destination: implied fraud. It is a journey that violates the spirit, if not the letter, of *Davison-Paxon, Boydston,* and *Wood* and the legislative history of § 523(a)(2)(A); it is a journey that is not necessary because of the statutory amendment.

The proper question under the Bankruptcy Code, then, is whether the debtor has intentionally employed or has consciously benefited from any conduct or omission that tricks or cheats the creditor. In effect, Congress has extended the statute to reach the conduct that Judge Sibley wished to reach in the dissent in *Davison-Paxon:* "an intended deceit." [6]

■ Having concluded that the proper test is whether there was an intended deceit or conscious benefit from an act or omission that tricks the creditor, the Court must look to all the facts and circumstances to determine the state of mind (intentions) of the debtor and the fact, *vel non* of deceit. The factors most frequently mentioned by credit card cases as indicia useful in determining these issues are:

| Factor | Useful in Determining State of Mind | Useful in Determining Deceit |
|---|---|---|
| 1. Length of time between purchases and filing of bankruptcy case | X | X |
| 2. Whether attorney was contacted re bankruptcy prior to incurring charges | X | |
| 3. Number and amount of charges | X | |
| 4. Financial condition of debtor | X | X |
| 5. Whether charges exceeded credit limit | X | X |

But other factors may be considered. Were the charges for "necessaries" or for goods intended for resale to finance a drug habit [7] (going to state of mind); was the creditor sufficiently protective of its own interests [8] (going to deceit).

In the case at bar, the Debtors apparently overcharged their account for almost a year, but it appears that they intended to repay the debt. The Debtors engaged in conscious and intentional deceit, however, when they continued to use the card after they were notified that the account was closed and that further charges would not be permitted.

■ This case holds that because the Debtors practiced the intended deceit when some goods or services were purchased by credit card, but not when other goods or services were purchased on the same card, then the total debt on the credit card is bifurcated into dischargeable and non-dischargeable portions. This arises from the language of 11 U.S.C. § 523(a)(2)(A) that refers to a "debt ... for obtaining property [or] services ... by ... actual fraud." [9] In

*Clark,* 95 U.S. (5 Otto) 704, 24 L.Ed. 586 (1887) holding that actual fraud is required; implied fraud is insufficient to render a debt non-dischargeable. 124 Cong.Rec.H. 11,095–6 9/28/78; S17,412–13 10/6/78.

6. In this context "intended" would include a deceit that was not premeditated but was consciously used to the Debtor's benefit and advantage over the creditor.

7. *In re Schartner,* 7 B.R. 885 (Bkrtcy., N.D.Oh., 1980).

8. *In re Stewart,* 7 B.R. 551 (Bkrtcy., M.D.Ga., 1980).

9. The Court concludes that the total debt due Complainant was in part obtained by fraud and

in part not obtained by fraud. The Code does not specifically address the possibility that part of the debt was the result of fraud and part not. There would appear to be three possible interpretations:

(1) The entire debt is non-dischargeable since it was *in part* obtained through fraud;
(2) The entire debt is dischargeable since not all of it was obtained through fraud;
(3) The debt is divided into non-dischargeable portions obtained through fraud and dischargeable portions not so obtained.

Absent authority to the contrary, the third alternative seems more appropriate since it is a less arbitrary solution. In addition, this solution more directly achieves the Congressional objective of disallowing discharge of fraudulent debts without also either a windfall to the creditor

this respect the decision follows the lead of other courts: *In re Dyer*, 4 B.C.D. 180 (W.D.Wis., 1978); *In re Banasiak* 8 B.R. 171 (Bkrtcy.M.D.Fla., 1981); *In re Gibson*, 1 B.C.D. 449 (S.D.Ohio, 1974).[10]

 The indebtedness to the creditor for all charges subsequent to March 22, 1984, are non-dischargeable. That sum is $258.56. The rest of the debt is dischargeable. With respect to the sum not discharged, Complainant is entitled to recover interest and other charges in accordance with its contract with the Debtors.

. An order will be entered accordingly.

## ORDER

City National Bank of Baton Rouge, a creditor of the above captioned debtors, having filed a complaint seeking the determination of the dischargeability of the VISA and MasterCard debts of debtors/defendants to plaintiff, and, after due notice by mail, said complaint came on for hearing on January 28, 1985; and

The Court, having dictated into the record findings of fact and conclusions of law, and having reconsidered those findings and conclusions, issued on this date an Opinion on Reconsideration; and in conformity with such opinion,

IT IS ORDERED that, to the extent of the sum of $258.56, the indebtedness of the debtors/defendants to the plaintiff be and it hereby is deemed and adjudged non-dischargeable and excepted from the operation of the discharge which was granted the debtors/defendants on September 20, 1984.

IT IS FURTHER ORDERED that there be judgment in favor of City National Bank of Baton Rouge for the sum of $258.56, together with interest and any other charges in accordance with its contract with the debtors/defendants.

IT IS FURTHER ORDERED that, to the extent of the sum of $1,584.59, the indebtedness of the debtors/defendants to the plaintiff be and it hereby is deemed and adjudged to have been discharged by the discharge granted the debtors/defendants on September 20, 1984.

with respect to the properly dischargeable portion of the debt and without a penalty to the creditor on account of the Debtor not having committed fraud on a portion of the debt. This issue may now have been eliminated as to cases governed by the Code as amended by P.L. 98–353 (Bankruptcy Amendments and Federal Judgeship Act of 1984). Section 523(a)(2)(A) now reads: "A discharge ... does not discharge an individual debtor from any debt ... *to the extent* obtained by false pretenses, a false representation, or actual fraud ..." [emphasis supplied.] This change became effective as to cases filed after October 7, 1984, and, therefore, does not apply to the instant case. The amendment,

however, appears to be a technical amendment without substantive impact. It is found in § 434 of the Act, under a subtitle H, entitled "Miscellaneous Amendments to Title 11." While the amendment clarifies the question for the future, this Court does not believe that it changes the law. Unfortunately, we have no legislative history.

10. The Court has not considered and expresses no opinion concerning the divisibility of a credit card debt for other purposes, such as the "payment in the ordinary course" exception to preferential transfers.