In re T. Kevin DOUGHERTY, Debtor.

**CITIBANK SOUTH DAKOTA, N.A., Plaintiff,**

v.

**T. Kevin DOUGHERTY, Defendant.**

BAP No. EC 87–1087 JMeAs.
Bankruptcy No. 985–02344.
Adv. No. 986–0057.

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted May 13, 1987.

Decided Feb. 5, 1988.

T. Kevin Dougherty, Stockton, Cal., pro se.

Gary Solmonson, San Jose, Cal., for Citibank.

Before JONES, MEYERS and ASHLAND, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

The debtor, T. Kevin Dougherty ("Dougherty"), appeals an order denying him a discharge for amounts owed to a credit card issuer. For the reasons set forth below, we VACATE and REMAND.

**1.** At trial, Dougherty objected to admission of the Visa statements on grounds of relevance and hearsay "because those are not my documents." Arguably, Dougherty has not preserved an authentication objection because he did not specif-

## FACTS

In March 1985, Citibank, N.A. ("Citibank"), sent material to Dougherty inviting him to apply for a Citibank Visa card. Dougherty completed the "Pre–Approved Acceptance Certificate" and signed and dated it on March 26, 1985. Citibank issued Dougherty a card soon thereafter. Between May and December of that year, Dougherty made charges of approximately $4,000 on the Visa card. Of that amount, approximately $515.39 was later "charged back" by Citibank.

Dougherty filed a Chapter 7 petition on December 10, 1985. Citibank filed its complaint on March 3, 1986, seeking a determination that Dougherty's debt to Citibank is nondischargeable pursuant to Bankruptcy Code section 523(a)(2)(A). At trial, Citibank limited its dischargeability action to charges listed on statements dated September 20, 1985 and later; a total of $2,675.

## ISSUES

I. Whether the trial court erred by admitting into evidence credit card statements and a summary of Dougherty's credit card account.

II. Whether the trial court erred in determining that Dougherty's credit card debts to Citibank were nondischargeable.

## DISCUSSION

I. *Admission of the statements and summary*

■ Dougherty argues that the trial court erroneously admitted into evidence statements of his Visa account offered by Citibank. Dougherty first argues that Citibank did not satisfy the requirements of Rule 901(a) of the Federal Rules of Evidence ("FRE").[1] That rule provides in pertinent part:

(a) *General Provision.* The requirement of authentication or identification

ically state it as a ground for objecting. FRE 103(a)(1). In light of the debtor's pro per status, however, we construe Dougherty's objection at trial as being based upon FRE 901.

as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

At trial, Dougherty testified that he recognized the Visa account statements; that he had received similar statements at his home; that the charges on the account and the balances due were, to the best of his knowledge, the same as he received at his home; and that he made all of the charges reflected on the statements. Dougherty did, however, indicate some apparent inaccuracies or inconsistencies in the statements. Near the end of trial, the court indicated some concern regarding the authentication of the documents. Nevertheless, the court concluded that the statements offered into evidence by Citibank were the statements of Dougherty's Visa account and that they were accurate.

■ We agree that Citibank has authenticated the statements. The essential question for authentication purposes is whether a reasonable jury could conclude that the evidence is what its proponent claims it is. J. Weinstein, M. Berger, *Weinstein's Evidence,* para. 901(a)[02] (1987). The condition that must be satisfied is one of fact. *Id.* at para. 901(a)[01]. The trial court's findings of fact will not be reversed unless clearly erroneous. Bankr.Rule 8013. Dougherty's testimony provides sufficient evidence to support the trial judge's conclusion that the statements were what Citibank said they were. Accordingly, we affirm the trial court's conclusion that the statements were properly authenticated.

■ Dougherty further argues that the statements are inadmissible hearsay "because those are not my documents." The account statements are hearsay in the technical sense: Out of court statements offered in court for the truth of the matter asserted. *See* F.R.E. 801(a). Dougherty argues that the statements could only be admitted under the business records exception of the hearsay rule, FRE 803(6), and that Citibank has not established that the statements qualify for that exception. Dougherty is clearly correct in concluding that the statements have not been qualified

under the business records exception; the trial judge stated as much.

Citibank argues, however, that the Visa statements are admissible because they are admissions of a party opponent under FRE 801(d)(2)(B) which provides "A statement is not hearsay if: The statement is offered against a party and is ... a statement of which he has manifested his adoption or belief in its truth...." Dougherty testified that he received statements similar to those admitted at trial and that he made all the charges on them. Dougherty claims he challenged the statements, but he only said that the balances appeared incorrect and he did not understand some notations on the statements. The charges, however, are the relevant information on the account statements. Dougherty never disputed that he made the charges or their accuracy. Therefore, we conclude that Dougherty has adopted the statements as true for purposes of FRE 801(d)(2)(B).

## II. *Dischargeability*

■ The dischargeability issue in the instant case presents a question that has not previously been addressed by this Court or by the Ninth Circuit. It arises from Bankruptcy Code section 523(a)(2)(A) which provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt ...

(2) for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ....

11 U.S.C. section 523(a)(2)(A) (1986).

In cases involving the dischargeability of credit card obligations, two lines of authority have developed. The majority of courts that have addressed this issue conclude that when a credit card is used, the cardholder impliedly represents that he or she has the ability and the intention to pay for the goods or services charged. This theory

is typically referred to as the "implied representation" theory. *See In re Faulk*, 69 B.R. 743, 752 (Bankr.N.D.Ind.1986) (noting that this is the majority view and citing cases in accord). The minority position is that the cardholder does not, by merely using the credit card, make any representation to the issuer. Rather, the cardholder makes a false representation to the issuer only when revocation of the card is communicated to the cardholder and the cardholder continues to use the card. Under this theory, the credit card issuer assumes the risk that the cardholder will incur debts he or she cannot pay until the user's right to possess and use the card is revoked and the revocation is communicated. Thus, only credit card charges made after the cardholder/debtor learns of the issuer's revocation of the card may be non-dischargeable. This theory is typically referred to as the "assumption of the risk" theory. *First Nat'l Bank of Mobile v. Roddenberry*, 701 F.2d 927 (11th Cir.1983); *In re Carpenter*, 53 B.R. 724, 728 (Bankr.N.D.Ga.1985).

We decline to adopt either the implied representation or the assumption of the risk theory. The following elements of a cause of action based on section 523(a)(2)(A) are typically used in credit card dischargeability cases:

1) that the debtor made representations;
2) that at the time he knew the representations were false;
3) that he made them with the intention and purpose of deceiving the creditor;
4) that the creditor relied on such representations; and
5) that the creditor sustained the alleged loss and damage as the proximate result of the representations.

*See, e.g., In re Robinson*, 55 B.R. 839, 845 (Bankr.S.D.Ind.1985); *In re Shrader*, 55 B.R. 608, 610 (Bankr.W.D.Va.1985). In third party credit card transactions, however, the concepts of representation and

reliance have little meaning. *See Roddenberry*, 701 F.2d at 931. As a result, trying to fit credit card dischargeability actions into the false representation analysis yields one of two results—the implied representation theory or the assumption of the risk theory.

We decline to adopt the implied representation theory because it implies the existence of the representation and reliance elements in the above test. This violates the principle that creditors must prove each of the elements of a dischargeability action by clear and convincing evidence. *See, e.g., Carpenter*, 53 B.R. at 729; *In re Younesi*, 34 B.R. 828, 829 (Bankr.C.D.Cal.1983). It also is contrary to the principle that exceptions to discharge are to be construed strictly against the objecting creditor and liberally in favor of the debtor. *In re Linn*, 38 B.R. 762 (9th Cir.BAP 1984); *Shrader*, 55 B.R. at 610. Moreover, it places credit card issuers in a preferred position in proving nondischargeability vis-a-vis other creditors. *See Carpenter*, 53 B.R. at 728.

We decline to adopt the assumption of the risk theory because it places credit card issuers in a virtually impossible position with respect to credit card charges made prior to revocation of the card. We note that the *Roddenberry* court stated that pre-revocation charges *may* be dischargeable. 701 F.2d at 928.[2] However, because representation and reliance are not meaningful in the credit card context, these elements are virtually impossible to prove. Therefore, as a practical matter, prerevocation charges will be dischargeable. It would take even the most diligent card issuer some time to determine that charges are being incurred that are not being kept current. During that period, all charges would be discharged regardless of the debtors' intent when the charges are made. This, in our view, opens the door to the use

---

2. The *Roddenberry* court also stated, however: we hold that the voluntary assumption of risk on the part of the bank continues until it is clearly shown that the bank unequivocally and unconditionally revoked the right of the cardholder to further *possession and use* of the card, and until the cardholder is aware of

this revocation.... Debts arising prior to the communication of revocation are part of the risk assumed by the bank.
701 F.2d at 932. Thus, under the *Roddenberry* analysis, prerevocation charges will be discharged.

of bankruptcy to discharge fraudulently incurred credit card debts.

Another fault of the assumption of the risk theory, is that, although it has the salutary effect of encouraging credit card companies to be cautious in issuing cards, it improperly focuses on the conduct of the "improvident creditor" rather than on the conduct of the deceitful debtor who may be trying to misuse the Bankruptcy Code. Although a discharge and fresh start are fundamental tenets of bankruptcy, they are intended only for *honest* debtors. *See Ragsdale v. Haller*, 780 F.2d 794, 797 (9th Cir.1986).

Instead of either of the above theories, we find persuasive and choose to follow the analysis of Judge Lindquist in *In re Faulk*, 69 B.R. 743 (Bankr.N.D.Ind.1986). The *Faulk* approach is essentially a modified version of the assumption of the risk theory. Judge Lindquist noted that *Roddenberry* was decided under section 17(a)(2) of the former Bankruptcy Act which excepted from discharge only debts arising from false pretenses or false representations. 69 B.R. at 754–55 (citing *In re Holston*, 47 B.R. 103, 107–08 (Bankr.M.D.La.1985)). The current Bankruptcy Code, however, adds "actual fraud" as a ground for non-dischargeability. 69 B.R. at 755 (citing *Holston*, 47 B.R. at 107–08). As a result, Judge Lindquist concluded:

> This Court is ... of the opinion that actual fraud, with which the Court in *Roddenberry* did not deal, will prevent a debt from being discharged. Where purchases are made through the use of a credit card with no intention at that time to repay the debt, that debt must be held to be nondischargeable pursuant to section 523(a)(2)(A). To hold otherwise would be to ignore the plain language of the statute and to reward dishonest debtors.

69 B.R. at 753–54.

The *Faulk* analysis adopts the reasoning of *Roddenberry* that the continued use of the credit card by the debtor *after* revocation of the card is communicated to the debtor, renders nondischargeable the liabilities subsequently incurred. *Id.* at 756.

With respect to prerevocation charges, however, the card issuer must prove by clear and convincing evidence that "the debt was incurred through actual fraud, i.e., where the debtor made the charges with no intention of paying for same." *Id.*

In determining what was the debtor's intent, Judge Lindquist used the following non-exclusive list of factors that trial courts should consider:

1. The length of time between the charges made and the filing of bankruptcy;
2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
3. The number of charges made;
4. The amount of the charges;
5. The financial condition of the debtor at the time the charges are made;
6. Whether the charges were above the credit limit of the account;
7. Whether the debtor made multiple charges on the same day;
8. Whether or not the debtor was employed;
9. The debtor's prospects for employment;
10. Financial sophistication of the debtor;
11. Whether there was a sudden change in the debtor's buying habits; and
12. Whether the purchases were made for luxuries or necessities.

*Id.* at 757 (citing *Carpenter*, 53 B.R. at 730).

We find the *Faulk* analysis appealing because it avoids the problems of both the implied representation and assumption of the risk theories outlined above. It does not infer the existence of any necessary element of a nondischargeability action; but it also does not make it virtually impossible for credit card issuers to establish the nondischargeability of a prerevocation obligation.

■ In the case at bar, the trial court used the implied representation theory which, based on the above discussion, was erroneous. We note that the court made the following findings: (1) that in the four

months prior to filing bankruptcy Dougherty began using the Visa card extensively; (2) that the number and amounts of the charges during that time suggested Dougherty was trying to avoid having merchants call to verify the charges; and (3) that during the same period Dougherty was working as a law clerk for a law firm that did a substantial amount of bankruptcy work. Although these findings are among those listed above, we feel it appropriate to remand this case for the trial court to reconsider its decision under the *Faulk* analysis as outlined above.

We further note that Dougherty made many small charges, often making several charges at the same store in a one or two day period. In numerous cases the charges made in this fashion would have exceeded $50, but because of the multiple charges they did not. Dougherty argues that the court improperly used the $50.00 credit check limit as a factor in inferring Dougherty's fraudulent intent because no evidence of such a limit was introduced at trial. Although many courts have recognized the $50.00 limit as a standard for credit card checks, *see, e.g., Roddenberry*, 701 F.2d at 929–29; *Robinson*, 55 B.R. at 845; *In re Schartner*, 7 B.R. 885 at 888 (Bkrtcy.Ohio 1980); *In re Stewart*, 7 B.R. 551 at 555 (Bkrtcy.Ga.1980), we agree that, absent evidence in the record, use of the $50.00 limit is mere judicial speculation. The court may, however, consider a pattern of small charges as evidence of intent to conceal from the issuer, the fact that the charges are being made.

Accordingly, the trial court's order holding the challenged credit charges nondischargeable is VACATED and the case is REMANDED.