**In the Matter of Daniel JANECEK, Debtor.**

**GENERAL ELECTRIC CAPITOL CONSUMER CARD CO., Plaintiff,**

v.

**Daniel JANECEK, Defendant.**

**Bankruptcy No. BK94–40037. Adv. No. A94–4075.**

United States Bankruptcy Court, D. Nebraska.

May 30, 1995.

Ray A. Sheaff, Lincoln, NE, for debtor-defendant Daniel Janecek.

Drew Frackowiak, Overland Park, KS, for plaintiff Gen. Elec. Capitol Consumer Card Co.

### *MEMORANDUM*

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

This case is before the court to determine if the credit card obligations owed by the debtor to General Electric Capitol Consumer Card Co. ("General Electric") are excepted from discharge pursuant to § 523(a)(2)(A) of the Bankruptcy Code. I reject General Electric's assertion that a debtor's objective inability to repay credit card debt at the time a charge is made should result, as a matter of law, in excepting the charges in question from discharge. I conclude the credit card debts at issue in this case are not excepted from discharge under § 523(a)(2)(A).

### FINDINGS OF FACT

The debtor, Daniel Janecek filed Chapter 7 bankruptcy in January of 1994. Daniel Janecek has been a self-employed antique dealer and restorer for the last twenty years. His business has generally produced only a marginal profit. His 1991 income tax returns show a $1,860.00 loss, and his 1992 income tax returns show a $4,000.00 profit from the business. Mr. Janecek has no other source of income, and his living expenses, at the time of the disputed credit card charges, were approximately $1,500.00 per month. At the time of bankruptcy, he held nine credit cards, two of which were issued by Plaintiff, General Electric. Most of these nine credit

cards were issued to him five to ten years ago. Of the two credit cards with General Electric, one card had a credit limit of $2,500.00 (5417–0213–3400–7582), and the other card had a credit limit of $5,300.00 (4408–6113–3400–7584).

It has been the debtor's ordinary and customary practice to periodically take cash advances to meet his basic living and business expenses. None of the nine credit card accounts of the debtor have ever been revoked, and it appears that the debtor always made his monthly minimum payments on his credit cards when due until September of 1993, four months before filing bankruptcy. It also appears that the debtor did not ever exceed the credit limits on any of the nine credit card accounts, except by accrual of interest after September of 1993.

General Electric asserts that $1,250.00 of its credit card claim against the bankruptcy estate is nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code. This $1,250.00 amount consists of two cash advances taken by the debtor in early August of 1993, one for $500.00 on account number 5417–0213–3400–7582, and one for $750.00 on account number 4408–6113–3400–7584. These advances placed both accounts near, but not over, their respective credit limits. At the time of the advances, the debtor had approximately $30,000.00 of aggregate credit card debt on his nine credit card accounts. After the cash advances in question were taken, the debtor did not obtain any further cash advances, and he ceased making minimum payments to General Electric. The only subsequent charges on the cards were to pay premiums on his credit card insurance.

In November of 1993, the debtor sought help from a consumer credit counseling service. With this assistance, the debtor unsuccessfully attempted to set up a payment plan with his credit card companies. The counseling service negotiated a deal with the credit card companies whereby the credit card debt could be serviced by a total monthly payment of $850.00. However, the debtor could not afford these payments, and counteroffered a lesser amount, which was rejected by the credit card companies. In late December,

1993, after having failed to negotiate a successful repayment plan for his credit card debt, the debtor contacted an attorney about filing bankruptcy. By January of 1994, when the debtor filed bankruptcy, the two accounts with General Electric had exceeded their credit limits because of accrual of interest on the debt. However, it is clear that debtor did not make charges or obtain advances that exceeded the General Electric credit card limits.

General Electric argues that the amount of the two cash advances in question should be determined nondischargeable because at the time the debtor obtained the cash advances, he had no realistic hope of repayment due to his financial situation. In response, the debtor asserts that at the time the cash advances were made, he intended to repay these amounts. Debtor also asserts that he made every attempt to pay his credit card debt, including seeking counseling and a payment schedule from a consumer counseling service, before reporting to bankruptcy.

### LAW

General Electric asserts that the credit card debt owed to it is nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code. Section 523(a)(2)(A) provides that a debt for money, credit, property, or services will be excepted from discharge if it is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition…." 11 U.S.C. § 523(a)(2)(A) (1995).

Notwithstanding the apparent clarity of this section, ambiguities result when it is applied to credit card cases. The cause of this ambiguity is the nature of credit card transactions. Although there may well be credit card cases under § 523(a)(2)(A) involving express written or verbal representations, such as a written misrepresentation on a card application, generally this is not the case. When a cardholder makes a purchase or obtains a cash advance, the cardholder is usually not dealing with the credit card issuer directly, but rather with a third party. Therefore, a verbal or written representation

is not expressly made to the credit card company at the time of a given transaction.

As a result of this conceptual difficulty, there exists considerable disparity in the decisional law in regard to the analytical structure for determining whether a credit card debt is excepted from discharge under § 523(a)(2)(A). Given the lack of an actual verbal or written representation by the cardholder, there exists no realistic basis for determining that the cardholder engaged in "false pretenses" or a "false representation", and courts who choose to analyze credit card cases as such are forced to engage in the fiction of an implied representation of an ability to repay upon the use of the credit card. The judicial fiction of an implied representation allows a court to analyze § 523(a)(2)(A) credit card cases by reference to decisional law involving other fraudulent representations.

■ However, I conclude that a resort to the fiction of an implied representation, and the resultant application of the theories of false pretenses and false misrepresentation, is unnecessary in credit card cases. I reach this conclusion because there is an alternative, more direct way to approach the problem through the application of a theory of actual fraud. Pursuant to § 523(a)(2)(A), a debt is determined nondischargeable if it arises from "false pretenses, a false representation, or *actual fraud.*" 11 U.S.C. § 523(a)(2)(A) (1995) (emphasis added). Under the decision of *In re Dougherty,* 84 B.R. 653 (9th Cir. BAP 1988), adopted by this court in *Matter of Troutman,* 170 B.R. 156 (Bankr.D.Neb.1994), it was established that in order to hold a credit card debt nondischargeable under § 523(a)(2)(A), a creditor must show "actual fraud" on the part of the debtor—namely that the debtor did not intend to repay the charges at the time such charges were made. *In re Dougherty,* 84 B.R. at 656–57.

■ The court in *In re Dougherty* held that various factors of circumstantial evidence may be considered in determining a debtor's intent. *Id.* at 657. These factors are as follows:

1. The length of time between the charges made and the filing of bankruptcy;
2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
3. The number of charges made;
4. The amount of the charges;
5. The financial condition of the debtor at the time the charges are made;
6. Whether the charges were above the credit limit of the account;
7. Whether the debtor made multiple charges on the same day;
8. Whether or not the debtor was employed;
9. The debtor's prospects for employment;
10. [The] Financial sophistication of the debtor;
11. Whether there was a sudden change in the debtor's buying habits; and
12. Whether the purchases were made for luxuries or necessities.

*In re Dougherty,* 84 B.R. at 657.

I conclude that the approach of *In re Dougherty,* which avoids the fiction of an implied representation, is the preferable approach in § 523(a)(2)(A) credit card cases, and will accordingly apply this analysis, with its various factors, to the case currently before the court.

## DISCUSSION

■ Counsel for General Electric asserts that the credit card debt owed it by the debtor should be determined nondischargeable because, as a result of the debtor's financial condition, the debtor knew or should have known that he could not repay the amounts charged. Counsel for General Electric asserts that the court should conclusively presume actual fraud because the debtor had an objective inability to repay his credit card debt at the time the disputed charges were made. In essence, General Electric asserts that the financial condition of the debtor at the time the charges were made should be the controlling factor. I decline to accept

this position. While the financial condition of the debtor at the time the charges were made is a relevant factor, I conclude that it is only one of numerous factors to be considered by the court and is not decisive on the issue of intent. It is important that courts soundly reject the proposed conclusive presumption arising from an objective inability to repay debt because its adoption would bestow upon the issuers of credit cards an unheralded bankruptcy preference. The fact is that nearly all bankruptcy debtors are hopelessly insolvent and have incurred debt at a time when they had an objective inability to pay. The first defense to such credits by a lender is sound loan underwriting. Where a lender finds itself in bankruptcy its debt should not be excepted from discharge on the simple theory that the debtor had an inability to repay the debt at the time the debt was incurred. Such a presumption would discourage prudent underwriting by lenders because in bankruptcy the lenders' debt would be nondischargeable. A debtor's insolvency is simply a factor to be considered in determining whether or not the debtor intended to repay a debt. Insolvency should not result in a conclusive presumption that a debtor lacked the requisite intent to repay a debt. As in the law of fraudulent conveyances, insolvency is an *indicia* of fraud, but it does not create a presumption of fraudulent intent.

■ On the facts of this case, I conclude that the debtor intended to repay the amounts charged at the time the charges were made, however unrealistic that goal may seem in hindsight. The charges at issue in this case are two cash advances taken by the debtor. In applying the factors of *In re Dougherty* to the present case, it appears that some of the factors suggest an intent to not repay these debts—namely that both cash advances were taken on the same day, were for fairly large amounts of money, and were taken at a time when the debtor's financial situation was precarious. However, an analysis of the remaining factors leads me to conclude that, at the time the charges were made, the debtor in fact intended to repay such charges.

There are only two cash advances at issue in this case, rather than a large amount of continuous charges by the debtor. Furthermore, both cash advances were taken over four months before filing bankruptcy, and at a time when an attorney had not been consulted regarding the bankruptcy filing. Neither cash advance caused the respective accounts to exceed the credit limit, and at the time the debtor took the cash advances at issue, he was gainfully employed, although making only a marginal profit.

In addition, the debtor in this case is not financially sophisticated, and it does not appear that he was purposefully attempting to manipulate his credit card accounts to deceive General Electric or his other creditors. The financial condition and practices of the debtor had existed for an extended length of time prior to the charges at issue. In fact, it was established that the debtor had used various credit cards in a like manner for a period of approximately ten years and was able to keep himself afloat. The evidence established that the debtor utilized his credit card accounts as a line of credit to meet living and business expenses during the seasons when business was slow. The debtor maintained his minimum monthly payments, and would attempt to pay down his accounts during the more lucrative business seasons. The debtor generally did not use his credit cards to make consumer purchases. The debtor did not make a sudden change in buying habits at, or prior to, the time these charges were made. The cash advances were taken not to purchase luxury items or for leisure purposes, but rather to meet basic living expenses.

Finally, it is evident that the debtor attempted to set up a repayment plan through a consumer credit counseling agency prior to contacting an attorney about filing bankruptcy. On his behalf, the credit counseling agency attempted to deal with his credit card companies and to workout a repayment schedule. Indeed, negotiations between the counseling agency and the credit card companies proceeded to the point where a specific proposal was made to Mr. Janecek, under which he would pay $850.00 per month to his creditors. Mr. Janecek decided he could not

afford to pay this amount per month, and counterproposed an amount of $500–$600 a month, which counterproposal was rejected by his creditors. I conclude that this subsequent debt counseling and negotiation is referable to an intent on behalf of the debtor to repay his credit card debts. It is apparent that, even after the cash advances in question were taken, and the unsecured debt of the debtor had significantly increased, the debtor was making some attempt to repay his creditors.

After weighing all of the *In re Dougherty* factors in aggregate, I conclude that General Electric has not proven actual fraud on the part of the debtor. Specifically, General Electric has failed to establish that debtor did not intend to repay the debts in question.

A separate order shall be entered holding that the credit card debts at issue in this case are dischargeable.