In re Mary R. SCHARTNER, Debtor.

The HUNTINGTON NATIONAL BANK formerly known as The Huntington Portage National Bank of Kent, Plaintiff

v.

Mary R. SCHARTNER,
Debtor-Defendant.

Bankruptcy No. 580–844.
Adv. No. 580–0277.

United States Bankruptcy Court,
N. D. Ohio.

Dec. 31, 1980.

---

David E. Williams, Kent, Ohio, for plaintiff.

Duane Doyle, for debtor.

Mary Schartner, debtor.

## FINDING AS TO DISCHARGEABILITY OF DEBT

H. F. WHITE, Bankruptcy Judge.

The Huntington National Bank filed a complaint for the determination of the dischargeability of a debt incurred by Mary R. Schartner on a Visa card No. 4449 620 003 595. The bank alleged that the debtor unlawfully incurred said obligation with the purpose of defrauding the bank between the period of February 6, 1978 and March 16, 1978 in the amount of $3,101.39.

An answer was filed by the debtor denying said allegations and asking that the debt be discharged and claiming that the proceeding was filed in bad faith and requesting reasonable attorney fees in the amount of $384.15.

The matter was heard by the Court and the Court makes the following finding of fact and law.

## FINDING OF FACT

It has been stipulated by both parties that Mary R. Schartner was a holder and obliger on a Visa credit card issued to her by Huntington National Bank, being card No. 4449 620 003 595, and that charges were made as set forth in the exhibits attached to the stipulations and are accurate with respect to the dates and amount of each transaction.

It was mutually agreed that of the total amount of $3,654.39 due and owing, $553.00 represented charges made prior to February 6, 1978 and is dischargeable. The debtor subsequent to March 16, 1978 made two payments on the account in the total amount of $381.00. Therefore she is asking for $2,720.39 to be found dischargeable.

The debtor admits living with one S. Ward, who was on parole and was allegedly using drugs and alcoholic beverages. The debtor admitted that all charges were made by her and that all charges were made under $50.00, as she was aware that any charges in excess of $50.00 would have to have the approval of the creditor.

The debtor was also aware that she was making the charges in order that Mr. Ward could then take the merchandise to an affiliate and receive cash refunds for the merchandise in order to purchase drugs for his drug habit. The debtor willingly went along with this arrangement.

The debtor was further aware that her credit card had a credit limit of $600.00 and she was aware that she had exceeded the credit limit, but she continued to make charges for the purposes of obtaining cash. The Court further finds that subsequent to the above-described use of the credit card, in April 1978, the debtor married S. Ward.

The Court finds that there was intentional fraud committed by the debtor. The defenses of intimidation and abuse do not justify the debtor's actions, as she could have notified the police of this scheme in which she apparently concurred, as she knew Mr. Ward was on parole. Further, she could have surrendered the credit card to the bank and notified them of the situation when the first purchases were made on February 8, 1978.

Further, the Court finds that the creditor did not harass the debtor but did take judicial action to collect said debt as provided for by law. The creditor contacted the debtor at her place of employment to collect the Visa credit card, but there was no evidence of harassment.

## ISSUE

The issue is whether the debtor's conduct constitutes fraud within the meaning of 11 U.S.C. § 523(a)(2)(A) so as to render the debt incurred by use of a Visa credit card nondischargeable.

## DISCUSSION OF LAW

Section 523 of the Bankruptcy Code specifically excepts certain debts from discharges granted under section 727 of the Bankruptcy Code. 11 U.S.C. § 523(a)(2)(A) provides, in pertinent part, that:

(a) a discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, . . ., by—

(A) false pretenses, a false representation, or actual fraud, . . .

In order that a debt may come within the fraud exception to discharge, money, property, or services must actually have been obtained by the false pretenses or by means of actual fraud. *3 Collier on Bankruptcy* 15th ed. § 523.08(1) (1979). The frauds included in § 523(a)(2)(A) are those which in fact involve moral turpitude or intentional wrong.

In the instant case, the debtor's action in using the credit card to make purchases over her credit limit, under $50.00, and with no reasonable expectation of being able to pay for the purchases constitutes actual fraud.

Debtor was aware of her $600.00 credit limit and made purchases in excess of the credit limit. Purchases made in excess of credit limit constitute obtaining property by false representations. In *In the Matter of Curcio*, 1 B.R. 727, 5 B.C.D. 1131 at 1132 (Bkrtcy.E.D.Mich.1979) the Court stated that:

In making a credit card purchase, the holder of a charge card represents that he is a valid holder of the card and that the purchase is being made in compliance with the conditions subject to which the card was issued. Purchases made by credit cardholder in excess of stated cred-

it limit, therefore, constitute obtaining money or property by false representations within the meaning of § 17a(2), unless credit card issuer has consented to, or acquiesced in purchases in excess of that limit.

■ Creditor-bank, herein, noticed that debtor's credit limit had been exceeded on February 17, 1978 and sent debtor a letter on February 17, 1978 and a second letter on February 27, 1978 notifying debtor that her credit limit had been exceeded and that her account would be suspended. A certified letter requesting that the card be brought back to creditor was returned unclaimed. An officer of the bank personally contacted the debtor on March 14, 1978 to collect her credit card. Thus, creditor did not consent to, or acquiesce in debtor's purchases in excess of her credit limit.

From an examination of the debtor's account statements, it appears that the majority of the debtor's credit card purchases were under $50.00. The debtor admitted that she was aware that a merchant makes no credit inquiry of the bank which issued the credit card, as to the validity of the card or the status of the credit account when the sale of goods is less than $50.00. If the transaction is for less than $50.00, the contract between the issuing bank and the merchant commonly provides that the risk of loss is on the bank absolutely.

In *In re Reinhart*, 1 B.C.D. 666 (E.D.Va. 1975) a case involving a score of charges under $50.00 with a Mastercharge card, the court found the debtor's deliberate design to make charges less than $50.00 amounted to fraud. The court stated that:

Under the mastercharge system, at the $50.00 mark a merchant is to telephone the clearinghouse for approval of the charge. With the bankrupt having exceeded her credit limit and with account in delinquent status for failure to make payments, such approval, would not be forthcoming. It is clear from the evidence—and the court so finds—that a design or pattern existed on the part of the bankrupt to make charges of less than $50.00. This was a deliberate ploy,

fraud, to obtain property on charge account by taking advantage of no-credit-check rule for purchases of less than $50.00

This Court concludes that the debtor made purchases under $50.00 with the intent of defrauding the creditors.

■ The debtor testified that she intended to pay for the purchases charged. However, a purchase of goods on credit by a debtor who has no reasonable expectation of being able to pay for them, constitutes a false representation. The fraud involved in such use of a credit card was explained in *In re Black*, 373 F.Supp. 105 at 107 (E.D. Wis.1974), where the court stated that:

Each time they presented their credit cards and signature for the purchases, the bankrupts impliedly represented to the store that they had the wherewithall, as well as the intention, to pay for them... The bankrupts active purchasing conduct and the symbolic representations involved in use of their credit cards constituted a form of fraud on store. Had the bankrupts represented, orally or in separate writing, at the time of their purchases that they could and would pay for them, it is clear that such representations would have been false for purposes of § 17a(2). The fact that they utilized their credit cards and signatures alone should not change the result.

At the time the charges in issue were made, the debtor had a monthly take-home pay of approximately $560.00. The debtor testified that she had a monthly expense for rent of $225.00 and monthly car payment of $70.00. Adding monthly expenses for utilities, food, clothing, medicine, gasoline and recreation, it appears to this Court that it was not reasonable for debtor to have expected to be able to pay for the many goods charged at the time the purchase money became due.

■ It is the conclusion of this Court that debtor's conduct in using the Visa credit card to make purchases over her credit limit, under $50.00, and with no reasonable expectation of being able to pay for the

purchases constitutes fraud within the meaning of 11 U.S.C. § 523(a)(2)(A). Therefore, the debt incurred through the debtor's use of Visa credit card is nondischargeable in the amount of $2,720.39.