In the Matter of, Stanford W. KLEIN, Debtor.

CITIBANK (SOUTH DAKOTA) N.A., a national banking association, Plaintiff,

v.

Stanford W. KLEIN, Defendant.

Bankruptcy No. 82–0145–BKC–JAG.
Adv. No. 82–0885–BKC–JAG–A.

United States Bankruptcy Court,
S.D. Florida.

April 27, 1983.

Jacobson & Gottlieb, Hollywood, Fla., for plaintiff.

Howard S. Gaines, Fort Lauderdale, Fla., for debtor-defendant.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

Plaintiff filed a timely Complaint to determine the dischargeability of a debt owing to it pursuant to 11 U.S.C. § 523(a)(2)(A). Plaintiff claimed that the Defendant obtained money by false pretenses or false representation by charging purchases on a VISA card and a Master-Card issued to him by the Plaintiff when the Defendant had no ability or intention of repaying the Plaintiff.

The Defendant admitted at trial that on April 26, 1982, he took a $2,200.00 cash advance on his VISA account, and that on April 28, 1982, he took a $1,250.00 advance on his MasterCard account. Furthermore, he testified that these amounts were larger than his customary use of these credit cards in the past and that, given his income and means of support, he considered these advances a substantial amount of money.

Defendant filed his Petition for Bankruptcy on June 15, and submitted Schedules listing his assets and liabilities. The debtor testified that his reasons for deciding to go into bankruptcy were his mounting pressures from debts, especially for various hospital and doctors' medical bills.

According to the Defendant, he used all of the money taken from the credit card cash advances to pay debts owed by him to his bookie for gambling losses. All of these payments were supposedly made in cash through a third party, although Mr. Klein had no evidence or proof that said payments were, in fact, made.

The Defendant further testified that at the time he took the cash advances from the Plaintiff, he fully intended to repay the obligation from money which he expected to receive from his brother and nephew. The money from them would have been repayment of a loan he made to them, and which was due in 1980. The receipt of the money from the Defendant's relatives was to be dependent on a real estate transaction closing. The Defendant, however, had no documents or evidence which corroborated either the existence of the debt owing to him from his brother and nephew or of the existence of their supposed real estate closing. Furthermore, the Defendant's Schedules B–2 and B–3 did not list any debt owing to the Defendant by his relatives, and his Statement of Financial Affairs stated that he had not "suffered any losses from fire, theft or gambling during the year immediately preceding or since the filing of the original petition".

Plaintiff seeks to have this debt excepted from discharge under § 523(a)(2)(A) of the Bankruptcy Code, which provides that a discharge under the Bankruptcy Code "does not discharge an individual debtor from any debt ... for obtaining money, property, services, or an extension, renewal, or refinance of credit, by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition".

■ The purchase of goods with credit cards by a debtor who has no reasonable expectation of paying for them constitutes false pretenses or fraud, and the debt is not dischargeable under § 523(a)(2)(A). *Huntington National Bank v. Schartner, In re Schartner,* 7 B.R. 885 (Bkrtcy.N.D.Ohio 1980); *Barnett Bank of Tampa v. Pitts, In re Pitts,* 10 B.R. 557 (Bkrtcy.M.D.Fla.1981). And an intent not to repay may be implied from the circumstances despite the defendant's testimony that he fully intended to pay the debt when incurred. *Prange v. Schnore, In re Schnore,* 13 B.R. 249 (Bkrtcy. W.D.Wis.1981).

■ In the case at bar, Defendant had no reasonable expectation of paying the credit card charges he incurred in view of all the circumstances. Although the Defendant was not making purchases, but rather, taking cash advances, the implied representations made to the lender here are the same as in the other credit card cases cited.

Further, the Defendant's testimony that he intended to repay the debt is not credible when compared to the other evidence. The Defendant did not have any documents proving or showing the existence of a debt owed to him by his brother and nephew except for his checkbook showing his handwritten notations. He testified that he did not have any of the returned checks showing that the money was, in fact, loaned to his relatives. Likewise, he stated that there was no written note or I.O.U. for the loan. Also, the Defendant presented no proof that his relatives were expecting income which did not materialize.

The fact that the Defendant's testimony at trial directly contradicted the Schedules which he had filed was weighed in assessing the overall credibility of his story. Neither the alleged loan due him from his relatives, nor his gambling losses, were reflected on the Defendant's Schedules. Finally, the credibility of the Defendant's testimony is impaired by his having stated that his filing of the bankruptcy petition was due largely to his mounting medical bills, but that at the time he took the cash advances from the Plaintiff, he knew that these bills had been, or would be, incurred.

The Court finds that at the time he incurred the credit card advances the Defendant had no reasonable expectation of repaying and did not intend to repay the debt owing to Plaintiff, and that the credit card cash advances were obtained by false pretenses, false representations, or actual fraud. Therefore, the debt is not dischargeable.

A separate Final Judgment incorporating these Findings and Conclusions is being entered pursuant to Bankruptcy Rule 921(a).