In re Dale Foster WILLIAMS and Karen Kaye Williams, Debtors.

The CHASE MANHATTAN BANK (USA), N.A., Plaintiff,

v.

Dale Foster WILLIAMS and Karen Kaye Williams, Defendants.

Bankruptcy No. 86 B 6370.
Adv. No. 86 A 974.

United States Bankruptcy Court, N.D. Illinois, E.D.

April 14, 1988.

---

Joel A. Schechter, Grossman, Mitzenmacher & Schechter, Michael Pekay, Chicago, Ill., for plaintiff.

William A. Lester, Lombard, Ill., for debtors/defendants.

## MEMORANDUM OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JACK B. SCHMETTERER,
Bankruptcy Judge.

Plaintiff, The Chase Manhattan Bank (USA), N.A. ("Bank") has sued Debtors/Defendants Dale Foster Williams ("Dale") and his wife Karen Kaye Williams ("Karen") to bar their discharge of two alleged debts—$1,568.38 in Count I and $6,928.90 in Count II—under 11 U.S.C. § 523(a)(2)(A). The gist of the Complaint is that both Debtors obtained money, credit, goods, or services in those amounts through false representations, false pretenses, or actual fraud. The Bank moved for summary judgment and submitted a designated portion of its supporting brief as its proposed statement of uncontested facts and documents under Local District Rule 12(e), adopted also as a Rule of this Court. Defendant concedes the facts and documents thereby designated, and did not file a designated statement of counter facts under Local District Rule 12(f).

For reasons set forth below, the Plaintiff's Motion for Summary Judgment is denied.

### Standards of Applicable Law

■ The party who seeks to establish an exception to the discharge of debt or bankruptcy bears the burden of proof, and the standard of proof is one of "clear and convincing evidence." *Matter of Bogstad*, 779 F.2d 370, 372 (7th Cir.1985).

Pursuant to 11 U.S.C. 523(a)(2) a debt is nondischargeable if:

(a) Debtor made a materially false representation of fact;

(b) Debtor knew the representation was false;

(c) Debtor made the representation with intent to defraud the creditor;

(d) The creditor actually and reasonably relied upon the representation; and

(e) As a result of such reliance the creditor suffered a loss or was otherwise damaged, i.e. the creditor relied to its detriment upon debtor's false representation.

Each of those elements must be established by clear and convincing evidence for each debt sought to be barred from discharge.

■ Use of a credit card implies a representation by debtor that he or she intends to pay, and the creditor on that card reasonably relies on such implied representation. *Matter of Hutchinson,* 27 B.R. 247 (Bankr.E.D.N.Y.1983).

■ The issue as to whether Debtor intended to pay for the debts incurred by use of the credit card, or did not intend to do so and thereby misrepresented to the creditor, depends on all circumstances surrounding the transaction and the debtor's personal situation. *Matter of Klein (Citibank (South Dakota) N.A. v. Klein),* 32 B.R. 79 (Bankr.S.D.Fla.1983).

Under Rule 56(c), F.R.Civ.P., summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987); *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 378 (7th Cir.1987); *Cameron v. Frances Slocum Bank & Trust Co.,* 824 F.2d 570, 573 (7th Cir.1987). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Farries,* 832 F.2d at 379; *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis,* 806 F.2d 146, 149 (7th Cir.1986). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 106 S.Ct. at 2513; *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *Howland,* 833 F.2d at 642; *Marine Bank Nat'l Ass'n v. Meat Counter, Inc.,* 826 F.2d 1577, 1579 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987). The existence of a material factual dispute is sufficient to bar summary judgment when the disputed fact is determinative of the outcome under applicable governing law. *Anderson,* 106 S.Ct. at 2510; *Howland,* 833 F.2d at 642; *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983); *ITT Indus. Credit Co. v. D.S. America, Inc.,* 674 F.Supp. 1330, 1331 (N.D.Ill.1987).

The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Celotex,* 106 S.Ct. at 2553; *Anderson,* 106 S.Ct. at 2511; *Barry Gilberg, Ltd. v. Craftex Corp.,* 665 F.Supp. 585, 589 (N.D.Ill.1987). The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on evidence that has been admitted. *Anderson,* 106 S.Ct. at 2512. In essence, however, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require trial or whether one party must prevail as a matter of law. *Id.* at 2512.

Of course, a party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if

any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 106 S.Ct. at 2553. However, once the motion for summary judgment is made and supported as described above, Rule 56(e) provides that a party opposing the motion may not rest upon the mere allegations or denials in his pleading, but his response must set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 106 S.Ct. at 2553; *Anderson*, 106 S.Ct. at 2510; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Howland*, 833 F.2d at 642. When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

### Undisputed Facts

Movant designated the facts as "Uncontested Facts" at pp. 3–6 of its Memorandum of Law with appended exhibits, and Debtors' counsel acknowledges the accuracy of those facts.

Those follow:

The Defendants filed their voluntary petition pursuant to Chapter 7 of Title 11, United States Code, on April 23, 1986 (Paragraph 1 of Defendants' Answer—Exhibit A). Chase is a creditor/claimant of the Defendants herein (Paragraph 2 of Defendants' Answer—Exhibit A).

On or about November 11, 1985, the Defendant, DALE FOSTER WILLIAMS, signed the name of his wife, KAREN KAYE WILLIAMS, to a CHASE Manhattan Master Card request coupon with a credit line of $1,000. (Exhibit B and deposition transcript page 29, line 24—Exhibit G.) On or about December 20, 1985, DALE WILLIAMS signed his wife's name to a form requesting an additional Master Card (Deposition transcript page 29, line 12–Exhibit G and Exhibit C.)

That the following purchases and/or cash advances were posted to the CHASE Manhattan Master Card account number 5465988630439142 on the following dates:

| Posting Date | Purchases and/or Cash Advances | Amount |
|---|---|---|
| 1/22/86 | Check No. 001 dated 1/19/86 to Broadview Academy | $415.00 |
| 2/2/86 | K–Mart | 31.51 |
| 2/12/86 | Check No. 002 dated 2/10/86 to Bank of Hinsdale | 229.80 |
| 2/10/86 | Tandy Leather | 42.00 |
| 2/16/86 | K–Mart | 47.21 |
| 2/16/86 | Dominick's | 43.57 |
| 2/16/86 | Dominick's | 45.20 |
| 2/17/86 | Charles A. Stevens | 38.25 |
| 2/17/86 | Carson Pirie Scott & Co. | 87.37 |
| 2/23/86 | Osco Drug | 26.04 |
| 2/26/86 | Hinsdale Rexall Pharmacy | 46.88 |
| 3/3/86 | Osco Drug | 34.10 |
| 3/9/86 | Victoria's Secret | 31.03 |
| 3/9/86 | Madigan's | 12.84 |
| 3/9/86 | Marshall Field's | 20.07 |
| 3/9/86 | Marshall Field's | 43.33 |
| 3/14/86 | Dominick's | 70.00 |
| 3/17/86 | Osco Drug | 43.26 |
| 3/28/86 | United Airlines | 108.00 |
| 3/29/86 | Lesportsac of Chicago | 56.31 |
| 4/2/86 | Bullock's Las Vegas | 47.59 |

(Exhibit D.) The only payments made on the aforesaid account totalled $21.00, which payments were made on March 24, 1986, and can be ascertained by viewing the aforesaid exhibit.

On or about January 29, 1986, DALE WILLIAMS signed his name and that of his wife to a CHASE Advantage Credit Account opener form with a credit line of $7,000. (Exhibit E and deposition transcript page 33, lines 11–14, and page 28, lines 8–10—Exhibit G.) Although KAREN WILLIAMS did not execute the aforesaid account opener form, she was aware of the credit line being opened. (Deposition transcript page 28, lines 17–19—Exhibit G.)

CHASE Advantage credit account checks were issued in the following amounts to the following entities and posted to the credit account number 2576002030 on the following dates:

| Posting Date | Check Payee | Amount |
|---|---|---|
| 3/18/86 | Check No. 010 dated 3/14/86 to Dominick's | $ 71.82 |
| 3/18/86 | Check No. 022 dated 3/17/86 to Lyons Savings & Loan | 6,900.00 |
| 3/25/86 | Check No. 014 dated 3/16/86 to Chase Manhattan Master Card | 21.00 |

(Exhibit F and deposition transcript page 31, lines 5–9 and lines 14–21—Exhibit G.) The only payments made on the aforesaid account totalled $186 and were made on or about April 24, 1986 (Exhibit F).

Check No. 022, dated March 17, 1986, payable to Lyons Savings & Loan in the amount of $6,900 was deposited into the Defendant's checking account. (Deposition transcript page 31, lines 20 and 21—Exhibit G.)

The gross income of Defendant, DALE WILLIAMS, for the year 1985 was $17,000. (Deposition transcript page 23, lines 15–24 —Exhibit G.) Further, the Defendant, DALE WILLIAMS, earned no income for the months of January, February and March of 1986. (Deposition transcript page 24, lines 15–17—Exhibit G.) However, even without having any discernable income, DALE WILLIAMS purchased an automobile in January of 1986, with a monthly payment of $330 or $340. (Deposition transcript page 8, lines 8–16—Exhibit G.) In addition to the monthly payment on the motor vehicle of approximately $330 or $340, the Defendants owned 14 or 15 credit cards, which, in addition to the line of credit issued by CHASE, required monthly payments of approximately $900 to satisfy the minimum payments. (Deposition transcript page 33, lines 18 and 19 and page 35, lines 11–17—Exhibit G.) These figures do not include any monthly payments for necessities of life consisting of rent or mortgage payments, utility costs, food, medical expenses, clothing costs, transportation or costs for operating motor vehicles, insurance and any other items regularly seen by this Honorable Court in Chapter 13 cases. All of these expenses were to be funded by DALE WILLIAMS who had no income between January and March, 1986 and a 1985 yearly income of $17,000. In addition, KAREN WILLIAMS earned approximately $1,200 per month, of which $450 was paid for rent and $350 went towards a car payment. (Deposition transcript page 45, lines 18–24 and page 46, lines 1—8—Exhibit G.)

It also appears from Mr. Dale William's deposition that he consulted his present counsel about filing bankruptcy in November of 1985 (Deposition transcript page 7—Exhibit G), and had consulted another attorney on the same subject in August or September of 1985. (Deposition transcript page 51—Exhibit G.) However Mrs. Williams was not agreeable to filing a petition in bankruptcy at those times. After he first spoke to his present counsel, Mr. Williams decided to relocate to California to pressure his wife Karen into filing this bankruptcy. (Deposition transcript page 44—Exhibit G.)

## DISCUSSION

■ Circumstantial evidence surrounding the transactions complained of will support a finding that the Defendants had no intent to repay the indebtedness. "[A]n intent not to repay may be implied from the circumstances despite the defendant's testimony that he fully intended to pay the debt when incurred." *Klein,* 32 B.R. at 80.

"Proof of such fraudulent intent may be implied if the totality of the circumstances so require[s]." *In re Niemiec*, 60 B.R. 737, 741 (Bankr.N.D.Ill.1986) (Hertz, B.J.).

■ Courts speaking in this area of litigation have looked to six criteria to establish the requisite intent to deceive. Those are:

1. The length of time between the charges made and the filing of bankruptcy;

2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. The number of credit charges made;

4. The amount of the charges;

5. The financial condition of the debtor at the time the charges are made; and

6. Whether the charges were above the credit limit of the account.

See *In re Deloian*, 60 B.R. 161 (Bankr.N.D. Ill.1986) (Toles, B.J.); *In re Lipsey*, 41 B.R. 255 (Bankr.E.D.Pa.1984); *In re Satterfield*, 25 B.R. 554 (Bankr.N.D.Ohio 1982). It is not necessary that all of the aforementioned criteria exist before a Court can find an intent to deceive. "One or two of these factors alone could be sufficient to convince a Court that an intent to deceive exists particularly if the facts of the case are egregious." *Deloian*, 60 B.R. at 163.

■ The undisputed facts make a strong showing against Dale Williams because of the sequence of events: Consultation with bankruptcy counsel just before and just after signing the request for credit with plaintiff; frequent use of the credit card in excess of credit limit over the ensuing several months; and the filing of the bankruptcy during the same month as the last charge, only five months after requesting credit. It also appears from the facts that Debtors' combined income did not enable them to keep up payments on all their obligations and needs.

However, the extent of Debtors' assets and liabilities during this period has not been established. The legal presumption of insolvency does not supply the need to prove all elements needed to bar discharge "by clear and convincing evidence". The facts presented leave open a possibility, not yet negated by Plaintiff, that Debtors had assets during all of the events established here that gave them reasonable grounds to believe their debts to Citicorp could be paid.

■ As to Mrs. Williams, Plaintiff's case has an additional deficiency. Her name was signed by Mr. Williams on all the requests for a Chase Master Card, for the additional Master Card ostensibly for her use, and for the Chase Advantage Credit Account. Defendants have agreed that she knew of the last accounts being opened. However, her lack of any affirmative acts to open the accounts in question is apparent. Further, her reluctance to file in bankruptcy is likewise evident. Mr. Williams even left home and went to California to pressure her into filing in bankruptcy. From this record this Court could not possibly find by "clear and convincing evidence" that she should be charged with inferences of intent to misrepresent normally flowing from facts such as those presented here.

Further, there is no showing by Plaintiff as to who used the cards and ran up the charges. In the light of questions above as to Mrs. Williams, that omission is significant.

Finally, there is no showing as to the purpose for and application of the $6,900 credit account check to Lyons Savings & Loan. In the light of the lack of information concerning assets of Debtors and the possibility that this payment related to an asset, this omission may likewise be significant.

CONCLUSION

Despite the lack of persuasive reasons in Debtors' objections to summary judgment, and despite the weighty case presented by the undisputed facts, the requirement of "clear and convincing evidence" was not met by Plaintiff. Unanswered fact questions that would be determinative of the issues are suggested by the present record. Therefore the motion for summary judgment must be denied. The date for trial on

May 23, 1988 at 2:00 P.M. will stand pursuant to prior final Pretrial Order.

The parties are cautioned that facts deemed undisputed for purposes of considering this motion are not thereby stipulated for use at trial. Such facts must be reintroduced at trial by stipulation or evidence in order to be considered by the Court at that time.