In re Terri Lynn MARLAR.

MANUFACTURERS HANOVER
TRUST CO., Plaintiff,

v.

Terry Lynn MARLAR, Defendant.

Bankruptcy No. 91–30383 S.
Adv. No. 91–3031.

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

May 6, 1992.

Order Denying Motion to Amend
Judgment, June 17, 1992.

Harry Hurst, Jr., Little Rock, Ark., for plaintiff.

Warren Dupwe, Jonesboro, Ark., for defendant.

Jan Thomas, Jr., West Memphis, Ark., U.S. Trustee.

MEMORANDUM OPINION

MARY D. SCOTT, Bankruptcy Judge.

This cause came on for trial on the Complaint to deny Dischargeability of Debt Pursuant to 11 U.S.C. § 523. The plaintiff, Manufacturers Hanover Trust Co. ("Manufacturers") filed this complaint on October 3, 1991, seeking a determination that the debt owed by debtor is nondischargeable pursuant to Bankruptcy Code section 523(a)(2)(A), obtaining credit by false pretenses, false representation, and actual fraud.

The debtor's defense is based upon estoppel. The debtor asserts that Manufacturers invited the debtor to obtain and use the credit card such that the debt is dischargeable. Essentially, the debtor argues, that the debts are Manufacturers' fault since they issued the card to the debtor.

The debtor received an invitation to obtain a credit card from Manufacturers in the early spring of 1990. The debtor accepted the invitation and a MasterCard was issued to her; the credit limit on that card was $3,000. At that time, the debtor was married to Mr. Spurlock and did not work outside the home. While still married and living with Mr. Spurlock, debtor's use of the credit card was modest: the first month she had the card, debtor had one credit purchase at Wal–Mart. The card was not used again until August 30, 1990, when a $63 charge was made at a clothing store. No other charges were made until November 1990, when the debtor's use of the charge card changed dramatically.

In July 1990, the debtor separated and divorced her husband, and obtained temporary employment. That employment ended in October 1990, however, after which her only support was $300 per month in child support payments. In November, the debtor married again. The new husband quit his job on the day they married.

Despite their unemployed status, the debtor and her husband went on a buying spree during the months of November and December 1990.[1] The October billing statement reflects a balance due of $108.54. The billing statement dated December 5, 1990, reflected a balance due of $4,336.09, over $1,300 in excess of the credit limit. Of that amount, $2,150 represented cash advances. During the months of December and January the debtor continued to make substantial charges, despite notices from Manufacturers that her account was "seriously past due." The debtor claims she didn't notice that she was over the credit limit: she only looked at the amount she was required to pay that month. She further assumed that since the card was accepted by merchants that the card was good.

In April 1991, the account was closed and her charging privileges suspended. Despite this notification, the debtor continued to make charges on the card. The May billing statement reflects a balance in excess of $5,300. In June 1991, the petition in bankruptcy was filed.

The debtor's payment history is equally cavalier. Despite the low payment requirement, on November 5, 1990, when the charges had been modest and the spending spree was just beginning, there was a past amount due on the statement. In mid-November, the debtor made one payment of $23. On January 31, 1991, the debtor made another payment of $100 at a time when the minimum amount due, and past due, totalled $195. No further payments were made on the account, yet the debtor continued to make charges. In December 1990 or January 1991, the debtor separated from her new husband. In January, the debtor also obtained employment at which she earned $5 per hour.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is

---

1. There was some testimony that the husband was involved in some of the purchases, and particularly, the cash advances. From the demeanor and testimony of the debtor, it is clear to the Court that any purchases made or cash advances obtained by the husband were uses of the card authorized by the debtor. The Court finds that the debtor's testimony on this issue was evasive. For example, in response to a question as to whether the husband's uses were authorized, the debtor replied that she "wasn't with him" when he obtained the cash advances.

a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified by 28 U.S.C. § 157(b)(2)(I).

The Bankruptcy Code provides in pertinent part:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>>> (A) false pretenses, a false representation, or actual fraud ...

11 U.S.C. § 523(a)(2)(A).

■ There are numerous factors the Court may look to in determining whether the debtor had an intent to repay the credit card debts, including: the length of time between credit card charges and bankruptcy filing; the number of charges made; the nature of the charges made; the amount of the charges; the financial condition of the debtor at the time the charges were made; whether the debtor made monthly payments on the charges; the past use of the credit card. *See generally Chase Manhattan Bank v. Williams (In re Williams)*, 85 B.R. 494, 499 (Bankr.N.D.Ill.1988).

■ Applied to the case at bar, each of these factors indicate that the debtor used the credit card with fraudulent purpose. A bare eight months elapsed from the beginning of the credit card spree to the time of the bankruptcy; only two months passed from the time the card was cancelled to the filing of the bankruptcy. The number of charges made was excessive, particularly in light of the resources of the debtor. While some of the charges were purportedly for gasoline and groceries, it appears that most of the charges were not for needs of the debtor or her children. Indeed, there was no explanation for the very large sums of cash acquired by use of the cards. The payment record is dismal: during the approximately one-year period the debtor possessed the card she made only five payments. More than once, the payments were late, and less than the amount due. The debtor's initial modest use of the card compared with the spending record beginning in November 1990, is also telling.

Based upon all of these factors, the Court concludes that the plaintiff has carried its burden in demonstrating that the use of the credit card was fraudulent within the meaning of section 523(a)(2)(A).

■ The debtor argues that the debts are dischargeable because Manufacturers invited her to obtain and use the card. This argument is misplaced. The focus of nondischargeability litigation is upon the actions of the debtor. The question before the Court is whether the *debtor* used the card in a fraudulent manner such that the debt is nondischargeable. *See* 11 U.S.C. § 523(a)(2). The relevant evidence centers on the circumstances surrounding credit card purchase transactions and the debtor's personal financial situation. *Chase Manhattan Bank v. Williams (In re Williams)*, 85 B.R. 494, 496 (Bankr.N.D.Ill.1988). Whether the bank has any culpability in issuing the card is not relevant to this determination. *See Karelin v. Bank of America National Trust and Savings Association (In re Karelin)*, 109 B.R. 943, 948 (9th Cir. BAP 1990) ("While the Bank's erroneous record permitted M. Karelin to borrow more money than the Bank intended, this has no bearing on the presence of absence of fraud on Ms. Karelin's part when she took the cash advances.").

Some courts have indicated that the bank's actions in delivering unsolicited credit cards may be relevant to a determination under section 523(a)(2)(B), obtaining credit by false pretenses. *See, e.g., First National Bank of Atlanta v. Robinson (Matter of Robinson)*, 55 B.R. 839 (Bankr. S.D.Ind.1985). While such facts may have some relevance in some circumstances to the issue of reliance, 11 U.S.C. § 523(a)(2)(B)(iii), reliance is not an issue in a determination under section 523(a)(2)(A). The focus in the case at bar is the intent of the debtor when she made particular charges on the card, not her intent when she obtained the credit card.

The debtor asserts that she in fact intended to repay the charges, despite her inability to do so. That is, she "hoped" she would have the ability to pay the charges.

The facts at trial, and the demeanor of the witness, indicate that the opposite was true. While these charges accrued at a reckless speed, neither the debtor nor her husband was employed. The debtor's only income was $300 per month in child support. The nature of many of the charges and the circumstances surrounding her use of the card indicate that the debtor was living beyond her means and in a manner not her custom. She was obtaining cash advances well beyond her living needs. The Court does not believe the debtor's testimony that she intended to repay the charges. The circumstances of this case indicate that the use of the charge card was fraudulent within the meaning of section 523(a)(2)(A).[2]

ORDERED that the indebtedness related to the use of MasterCard Account No.: 5217 0016 4227 3672 to Manufacturers Hanover Trust Company is nondischargeable.

IT IS SO ORDERED.

### ORDER DENYING MOTION TO AMEND JUDGMENT

This cause is before the Court upon the Motion to Amend Judgment filed by the plaintiff Manufacturers Hanover Trust Company. On October 3, 1991, the plaintiff filed a complaint to deny dischargeability of debt pursuant to section 523 of the Bankruptcy Code. The prayer for relief requested that the Court find "the indebtedness to Manufacturers to be nondischargeable, for interest, attorney's fees, and all other proper relief to which Manufacturers is entitled." On May 6, 1992, after trial of this adversary proceeding, Judgment was entered in favor of the plaintiff which stated that the debt was nondischargeable. On May 11, 1992, the plaintiff filed a motion with this Court requesting that the Judgment be amended to provide for judgment of the specific amount of the indebtedness, pre-judgment interest, and post-judgment interest.

A determination of whether a debt is dischargeable is a core proceeding pursuant to section 157(b)(2)(I). In determining the dischargeability of a debt, the Court decides that the debtor shall remain personally liable for the debt despite the grant of a discharge under section 727 of the Bankruptcy Code (11 U.S.C.). 11 U.S.C. § 523(a).

A determination of non-dischargeability, however, is not the equivalent of reducing a debt to judgment. A complaint to reduce a debt to judgment, filed in the Bankruptcy Court, would not, for example, constitute a core proceeding. *See generally Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). While some issues decided in a dischargeability hearing may have collateral estoppel effect in a later proceeding to reduce the debt to judgment, not all elements of an action reducing the debt to judgment are identical to those of a dischargeability proceeding. The actions are not identical such that a judgment rendering a debt non-dischargeable constitutes a judgment on the debt itself. Accordingly,

IT IS ORDERED AND ADJUDGED that the Motion to Amend Judgment filed by Manufacturers Hanover Trust Company is DENIED.

IT IS SO ORDERED.

---

**2.** This is not to say that the debtor acquired the credit card by fraud. However, that is not the inquiry before the Court. As stated above, the issue is whether the fraudulent intent existed at the time of the particular charges, not her intent when she accepted the card. Further, not every one of the charges were fraudulent. The Court finds that there is insufficient evidence of fraud for the charges made during the months of August, September, and October 1990. This is of no monetary assistance to the debtor, however. Applying the few payments made to the earliest, dischargeable debts, the balance due consists solely of the nondischargeable charges.