In re Oussama N. NAHAS, Debtor.

**AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., Plaintiff,**

v.

**Oussama N. NAHAS, Defendant.**

**Bankruptcy No. 92–10391–RWV–7. Adv. No. 93–10.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

Aug. 8, 1994.

Karl T. Ryan, Walsh Ryan & Jodka, Indianapolis, IN, Gilbert B. Weisman, Becke & Watkins, Malvern, PA, for plaintiff.

Robert Evans, Indianapolis, IN, for defendant.

### ORDER

BASIL H. LORCH, III, Bankruptcy Judge.

This matter came before the Court on the **Plaintiff's Motion for Summary Judgment** and **Brief in Support of Summary Judgment** filed on or about June 20, 1994. The defendant filed an **Answer Brief and Statement of Genuine Issues in Opposition to Plaintiff's Motion for Summary Judgment** on July 5, 1994. The plaintiff filed **Proposed Findings of Fact and Conclusions of Law** with attached Exhibits.

The Court, having considered the foregoing arguments of counsel and having reviewed the pleadings and applicable law, and being otherwise fully and sufficiently advised, hereby **GRANTS Plaintiff's Motion for Summary Judgment** for the reasons set forth in the attached Memorandum. The Court finds that Nahas did not intend to repay the debt to American Express and hereby finds that the debt is nondischargeable under Section 523(a)(2)(A).

The plaintiff's attorney's fees incurred in connection with the stated account, however, do not represent monies obtained by false pretenses, a false representation or actual fraud, and do not affect the amount of money that the debtor obtained from American Express by those means. That debt is, accordingly, dischargeable.

**IT IS SO ORDERED.**

### MEMORANDUM

This matter came before the Court on the **Plaintiff's Motion for Summary Judgment** and **Brief in Support of Summary Judgment** filed on or about June 20, 1994. The plaintiff American Express Travel Related Services Company, Inc. ["American Express"] contends that the defendant's gambling habit evidences that he had no intent to repay cash advances for gambling and/or did not have the ability to repay at the time money or goods were obtained and asks that the credit card debt be declared nondischargeable. American Express additionally asks that the Court include attendant attorney fees and costs in the nondischargeable debt as allowed by the contract between the parties. American Express relies upon the defendant's admissions and responses to Plaintiff's Interrogatories and Plaintiff's Request for Production in support of it's Motion for Summary Judgment. The defendant filed an **Answer Brief and Statement of Genuine Issues in Opposition to Plaintiff's Motion for Summary Judgment** on July 5, 1994. **Proposed Findings of Fact and Conclusions of Law** were filed by plaintiff.

### FACTS

Oussama N. Nahas ["Nahas"] filed a Chapter 7 petition in bankruptcy on October 13, 1992. At and immediately prior to filing his bankruptcy petition, Nahas was employed at the Olive Garden restaurant in Indianapolis, Indiana, earning gross income between $800 to $1000 monthly. Nahas held an American Express credit card at the time of filing, with an outstanding balance of $33,659.07. Nahas had additional unsecured nonpriority debts

totaling $94,844.33 at the date of filing, all of which was credit card debt.

Nahas opened the American Express account in March, 1991. The Court has no records to document his account activity prior to October, 1991. All of the contested debt was incurred between October, 1991, and January, 1992. Attached as Exhibits A1–A20 of Plaintiff's Proposed Findings of Fact and Conclusions of Law are account statements which reflect various charges and cash transactions between October, 1991, and January, 1992. The defendant does not contest the stated indebtedness or object to the account statements.

Between October and November 29, 1991, Nahas charged $11,765.18 in ninety-two transactions. Several of the foregoing transactions are evidenced by food and beverage receipts for hundreds of dollars each. Between November and December, 1991, the defendant purchased various luxury goods through American Express catalog sales, with payment to be made in monthly installments. The transactions include the purchase of a $3,295.00 watch, a $995.00 bracelet, a $1,699.00 camcorder, a $2,999.00 bedroom set[1] and a $2,499.00 television set. The full purchase amount became due upon default of the account.

American Express additionally documents eighteen cash advance transactions between November 23, 1991, and January 8, 1992, wherein Nahas obtained cash in the total amount of $5,102.00 and transactions fees in the amount of $270.00. The account has been charged with delinquency fees in the amount of $3,826.47.

In response to Interrogatories, Nahas admitted that all cash advance proceeds were lost at various Atlantic City, N.J. casinos, and that he intended to repay the debt with gambling winnings [Paragraphs 11, 14, and 19, **Answer to Plaintiff's First Set of Interrogatories Under Fed.R.Bank.P. 7033 and Rule 33 F.R.Civ.P. ["Answer to Interrogatories"]**]. Nahas further represented that "[a]ll luxury items bought through American Express were sold to generate funds for gambling, except for the defective bedroom set which is still in my possession. All items were sold in Atlantic City to strangers." **[Answer to Interrogatories**, Paragraph 23.]

## DISCUSSION

The Court notes, initially, that it has jurisdiction over this matter pursuant to 28 U.S.C. Section 157; 28 U.S.C. Section 1334; 11 U.S.C. Section 523; and the Standing Order of the United States District Court for the Southern District of Indiana effective since July 11, 1984, which automatically refers bankruptcy cases and proceedings to this Court for hearing and determination. This matter is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(I).

American Express has moved for summary judgment pursuant to Bankruptcy Rule 7056, which makes Federal Rule of Civil Procedure 56(c) applicable to adversary proceedings filed in bankruptcy cases. Rule 56(c) provides, in pertinent part:

(c) **Motion and Proceedings Thereon. . . . .** The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The United States Supreme Court decided a trilogy of cases in 1986 encouraging summary judgment in factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538. The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its

---

1. Nahas contends that the only luxury item still in his possession is the bedroom set which he has disputed as being defective. Nahas alleges that he has tried to return the bedroom merchandise.

pleadings but must affirmatively show that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

When reviewing a motion for summary judgment, all reasonable inferences are to be resolved in favor of the nonmovant. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15. In order to survive a motion for summary judgment, the nonmovant need only present evidence from which the factfinder may return a judgment in his favor. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. With the proper standard by which to review a motion for summary judgment established, the plaintiff's motion will now be reviewed.

American Express contends that the claimed credit card debt is nondischargeable under 11 U.S.C. Section 523(a)(2)(A) since the funds were obtained by false pretenses, false representation, or actual fraud. Plaintiff further contends that the defendant's own admissions and answers to interrogatories resolve all material issues of fact and leave no genuine issue for trial.

The standard of proof for establishing an exception to discharge under section 523(a)(2)(A) is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). It has further been held that exceptions to discharge are construed strictly against a creditor and liberally in favor of a debtor. *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985). It is in this light that we proceed to review the elements necessary to establish an exception to dischargeability under section 523(a)(2)(A).

■ The elements necessary to except fraud from discharge under Section 523(a)(2)(A) are as follows: (1) that the debtor made representations; (2) that at the time he knew the representations were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations. *See, e.g., In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985); *In*

*re Robinson,* 55 B.R. 839, 845 (Bankr. S.D.Ind.1985).

■ An intent to deceive may be inferred from a false representation which the debtor knows or should know will induce another to advance money to the debtor. *In re Kimzey,* 761 F.2d at 424. The actual intent of the debtor must generally be established by circumstantial evidence. *In re Guy,* 101 B.R. 961, 978 (Bankr.N.D.Ind.1988). The Seventh Circuit has further held that actual reliance may likewise be established by circumstantial evidence. *In re Kreps,* 700 F.2d 372, 376 (1983).

■ It has been held as the majority view that the use of a credit card creates an "implied representation" that the cardholder has the ability and intention to pay for the goods or services charged. *See, In re Robinson, supra,* 55 B.R. at 845; *In re Williams,* 85 B.R. 494, 496 (Bankr.N.D.Ill.1988). Under the implied representation theory, the purchase of goods with credit cards by a debtor who has no reasonable expectation of paying for them constitutes false pretenses or fraud, and the debt is not dischargeable under Section 523(a)(2)(A). *In re Klein,* 32 B.R. 79, 80 (Bankr.S.D.Fla.1983) (citing *In re Schartner,* 7 B.R. 885 (N.D.Ohio 1980); *In re Pitts,* 10 B.R. 557 (Bankr.M.D.Fla.1981). Another line of authority would narrowly restrict dischargeability exceptions by an "assumption of risk" theory. *First National Bank of Mobile v. Roddenterry,* 701 F.2d 927 (11th Cir.1983). Yet other courts have devised a checklist of factors that courts should consider to determine a debtor's intent to repay. Factors to consider include the time between the charges and the bankruptcy; the number, nature and amount of charges; the debtor's financial condition and his financial sophistication; whether the credit limit was exceeded; multiple charges on the same day; whether the debtor was employed or the prospects for employment; whether there was a sudden change in buying habits; whether the debtor made payments on the account; and whether an attorney had been consulted regarding filing of bankruptcy before the charges were made. *In re Faulk,* 69 B.R. 743, 757 (Bankr.N.D.Ind.1986); *In re Dougherty,* 84 B.R. 653, 657 (9th Cir. BAP

1988); *In re Williams, supra,* 85 B.R. at 499; *Manufacturers Hanover Trust Co. v. Marlar,* 142 B.R. 304, 306 (Bankr.E.D.Ark.1992).

■ The plaintiff contends that Nahas' hope to repay his debt from gambling winnings does not provide the requisite intent or ability to repay and thus excepts the debt from discharge as having been obtained by false representations. *See, In re Clagg,* 150 B.R. 697, 698 (Bankr.C.D.Ill.1993); *In re Bartlett,* 128 B.R. 775 (Bankr.W.D.Mo.1991); *In re Hansbury,* 128 B.R. 320 (Bankr. D.Mass.1991); *In re Parker,* 59 B.R. 721 (Bankr.D.Mass.1986); *In re Klein,* 32 B.R. 79, 80 (Bankr.S.D.Fla.1983); *In re Turner,* 23 B.R. 681 (Bankr.D.Mass.1982). American Express clearly has ample support for its position under the majority caselaw. This Court, however, considering the nature of these summary proceedings, opts to consider the various factors from which it may determine the debtor's state of mind.

Upon a review of the record before the Court, Nahas went on an intensive three-month spending spree. The account was opened in March, 1991, and there is no allegation of any delinquency prior to October, 1991. The November account statement shows total payment credits of $3,047.26 in October, leaving a zero balance. The November statement shows a new balance of $8,833.04. The December statement reflects no payment toward the outstanding balance and new charges of $7,463.02, including several cash withdrawals. The January statement indicates new charges of $3,425.50 and a credit of $637.36.[2] Nahas had purchased several items through American Express catalog sales on an installment basis. The entire purchase price was accelerated in January when he defaulted in payment on the account. The account additionally accrued interest and penalties bringing the account balance to $33,659.07 on October 13, 1992, when the petition was filed.

The Court does not know the debtor's past spending history or even his credit limit. During the period in which Nahas incurred the instant debt, however, Nahas often made multiple charges on the same day, and incurred exorbitant expense at various restaurants in Indianapolis.[3] The debtor also incurred large debt for photo or electronic equipment at Target and Office Depot, which the Court speculates was sold to generate funds for gambling. Nahas admittedly purchased "all luxury items" for resell to generate cash. Nahas did not consult with an attorney regarding filing until after the charges were incurred.[4]

Nahas does not contest the amount of the debt owed. As in *Clagg, supra,* the only issue before the Court is whether Nahas intended to repay his debt to American Express. Similarly, too, Nahas cites no authority that a hope to win at gambling provides the requisite intent to repay. "Intent to repay requires some factual underpinnings which lead a person to a degree of certainty that he or she would have the ability to repay. Mere hope, or unrealistic or speculative sources of income, are insufficient." *Clagg,* 150 B.R. 697, 698. Although Nahas was employed throughout the relevant time period, he was clearly earning insufficient income to service such a debt and his admitted "hope" to repay from gambling winnings is not enough. In light of the foregoing factors, it is clear that Nahas was spending well outside what he could have ever hoped to repay. Because Nahas could not fail to have perceived the hopelessness of his financial situation, the Court finds that he had no reasonable expectation or intent to repay the debt to American Express.

■ American Express also seeks its attorney fees and costs pursuant to the contract terms with the defendant. The Court finds that any contractual claim American Express may have for attorney fees is dischargeable because it is not a "debt for mon-

---

**2.** The statement notes in regard to the credit: "Install Chg Under Investigation 12/14."

**3.** The November statement evidences four transactions with Parthenon Restaurant, all over $300.00 each, and at least eight transactions with Midtown Cafe ranging between $150.00 to $557.00. There were four similar transactions documented in the December statement.

**4.** Nahas testified in his Answers to Interrogatories that he consulted with an attorney in February, 1992, prior to filing his petition in October, 1992.

ey, property, services, or ... credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud...." 11 U.S.C. Section 523(a)(2)(A). *Sciscoe v. Leistner,* 164 B.R. 86, 89 (S.D.Ind.1993); *and see, In re Barr,* 54 B.R. 922, 925 (D.Ore.1984); *In re Smith,* 72 B.R. 300, 301 (Bankr.M.D.Fla. 1987). The Court finds that such fees are, therefore, dischargeable.

For all of the foregoing reasons, the Court finds that the debtor did not intend to repay American Express and the debt is hereby nondischargeable under Section 523(a)(2)(A). The Court further finds that the plaintiff's attorney's fees are hereby discharged.

**IT IS SO ORDERED.**