In re Nathan & Marilyn McCALL.

FIRST USA BANK, Plaintiff,

v.

Nathan L. McCALL, Defendant.

Bankruptcy No. 94–10128 S.
Adv. No. 94–1048.

United States Bankruptcy Court,
E.D. Arkansas,
Batesville Division.

Oct. 26, 1995.

Joyce Babin, Little Rock, AR, Gilbert B. Weisman, Malvern, PA, for Plaintiff.

John Purtle, Batesville, AR, for Debtors/Defendant.

James C. Luker, U.S. Trustee, Wynne, AR.

**FINDINGS OF FACT AND
CONCLUSIONS OF
LAW**

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE came before the Court upon the trial on the merits of the Complaint to Determine Dischargeability, filed on June 12, 1995. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(I).

Plaintiff First USA Bank holds a claim against the debtor Nathan L. McCall arising from one of his many credit cards. The account was opened in July of 1984 and had a credit limit of $6,000. In early April 1994, the debtor's balance on the account was 00.00. A mere four months later, at the time of the filing of the Chapter 7 petition in bankruptcy, the account balance was $6154.06, of which $5,950 was due to cash advances taken within a two month period of time just prior to bankruptcy. The remainder of the balance is due to the finance charges. Thus, the entire balance is attributable to cash advances. Only one payment of $60 was made on the account, early in the withdrawal chronology.

The Chapter 7 schedules reflect that the debtors had a monthly income of $1,400 but had monthly expenses, *excluding* credit card payments, of over $1,800. Debtors' listed unsecured debt, amounting to over $57,000, consists solely of credit card debt, the minimum payments on which amounted to approximately $1,000 per month.[1] The debtors

1. These payments were not listed on the debtors' schedule of monthly expenditures.

assert that these expenditures were for living and travel expenses.

The Bankruptcy Code provides in pertinent part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). In determining whether use of a credit card is fraudulent, *i.e.*, whether the debtor had no intent to repay the credit card debts, courts look to numerous factors, including: the length of time between credit card charges and the bankruptcy filing; the number of charges made; the nature of the charges made; the amount of the charges; the financial condition of the debtor at the time the charges were made; whether the debtor made monthly payments on the charges; and the past use of the credit card. *See generally Chase Manhattan Bank v. Williams (In re Williams)*, 85 B.R. 494, 499 (Bankr.N.D.Ill. 1988).

Based upon the facts of this case, the Court finds that the charges on the First USA Bank credit card were fraudulent under section 523(a)(2) because Nathan McCall had neither the ability nor the intent to repay the charges. The Court does not find credible the debtor's protestations that he had the ability. In light of his extensive experience in the credit industry, including experience in credit collections, it is simply beyond credulity that he believed he could pay his current, excessive credit card debt, living expenses, and, at the same time, continue to draw on this account.

A comparison of the debtor's income stream and expenses belie his assertions of means and intent. At the time he made the charges, the debtor was employed as a minis-

ter, earning only $286 per month in that position. His employment prospects were apparently so dismal that he was compelled to travel as far as Detroit, Michigan to seek employment. In contrast, the debtors expended $1,400 per month in consumer living expenses in addition to the $1,000 minimum payments on credit card debt. Debtor's wife is not employed outside the home.

Once he began the cash withdrawals, debtor made only one, minimum payment on the debt. The charges were made near in time to each other and to the filing of the bankruptcy case. Although the debtor orally asserted that he did not consult with an attorney for the purposes of filing bankruptcy, his responses to interrogatory numbers 7 and 8 (Exhibit 4A) indicate that he in fact sought legal advice from two different attorneys regarding debt collection and bankruptcy in June 1995 and July 1994. Debtor's testimony that his first attorney "maneuvered" him into bankruptcy and that he "never agreed" ... is in conflict with his testimony that in July his finances had "deteriorated to where [he] had to do something else," as well as in conflict with this extensive experience in debt collection.

The charges were entirely cash withdrawals in large amounts—in excess of the expenditures needed for the asserted "living expenses." Debtor made a $3,000 withdrawal in one month, $1,200 in excess of his stated living needs and travel. In addition to these factors, it is noteworthy the debtor had a history of accruing large credit card debt. Indeed, the fact that his unsecured debt consists solely of credit card charges raises questions as to the accuracy of the schedules.[2] While large credit card debt may not be unusual among debtors, the failure to list any other unsecured creditors is suspect.

The Court does not believe the debtor's self-serving protestations that he had the ability, belief and intent to repay the credit card at the time he made the cash withdrawals. He was virtually unemployed with difficult prospects for employment. His monthly debt payments were vastly in excess of his

---

**2.** The debtor admits that he did not accurately complete the schedules, having omitted $1,000 in monthly payments from his schedule of expenses.

income such that his stated "belief" in his "ability" to repay is incredible. The debtor is not an uneducated novice in financial matters. He is experienced in collections and credit and thus was fully aware of his precarious financial position and the implications of withdrawing large amounts of cash on credit. Thus, at the time of the charges, they were "obtained by false pretenses, a false representation, or actual fraud." *See* 11 U.S.C. § 523(a)(2)(A). Accordingly, it is

**ORDERED** that the debt owed by the debtor Nathan L. McCall is nondischargeable in this bankruptcy. Judgment shall be entered in favor of the plaintiff.

**IT IS SO ORDERED.**

### *JUDGMENT*

This action came on for trial before the Court, Honorable Mary Davies Scott, U.S. Bankruptcy Judge, presiding, and the issues having been duly tried and a decision having been duly rendered,

**It is Ordered and Adjudged** that the debt owed by the defendant Nathan L. McCall to the plaintiff First USA Bank is nondischargeable in this bankruptcy case pursuant to 11 U.S.C. § 523(a)(2).

**IT IS SO ORDERED.**